METROPOLITAN TRUST CO. OF NEW YORK et al. v. TOLEDO, ST. L. & K. C. R. CO. et al.

HARMS v. HUNT.

(Circuit Court, D. Indiana. March 23, 1901.)

No. 8,970.

1. CARRIERS OF LIVE STOCK—CONTRACT LIMITING AMOUNT OF LIABILITY TO AGREED VALUATION.

A stipulation in a bill of lading for live stock that in case of loss or injury in shipment the carrier shall not be liable beyond a stated and agreed valuation per head, in consideration of which the shipper is given a lower freight rate, is valid and binding on the parties, although the loss or injury results from the negligence of the carrier.

2. PLEADING—ANSWER—PARTIAL DEFENSE.

A paragraph in an answer which purports to state a complete defense to the action is bad, when it merely pleads a contract limiting the defendant's liability to a stated sum. To avail himself of such limitation, defendant must admit liability to the extent of the sum stated, and plead the contract as a defense to his liability for the excess claimed.

3. SAME—OPERATION AND EFFECT OF DEMURRER.

Where a complaint is fatally defective, a demurrer filed by the plaintiff to the answer must be carried back and sustained to the complaint.

**4. CARRIERS—LIMITATION OF LIABILITY—REQUIREMENT OF NOTICE OF LOSS OR INJURY.**

A provision in a bill of lading that the carrier shall not be liable for damages on account of injury or damage to the property shipped, unless a claim therefor, verified by affidavit, shall be presented to it or its agent within 30 days after the property is delivered, is reasonable and valid; and the presentation of such claim thereunder is a condition precedent to the right of the shipper to maintain an action, and must be alleged in his complaint.

Intervening Petition of Henry L. Harms against the Receiver to Recover for Injury to Stock in Shipment. On demurrer to answer.

Blackledge, Shirley & Wolf and Rooker, Hanna & Daily, for petitioner.

Clarence Brown and Chas. A. Schmettau, for defendants.

BAKER, District Judge. The petitioner alleges that Samuel Hunt, by appointment of this court, was receiver operating the Toledo, St. Louis & Kansas City Railroad across the entire state of Indiana, and into the county of Howard, in said state; that he was a common carrier, over said railroad, of passengers and freight; that on July 21, 1900, the petitioner delivered a certain stallion race horse and a certain gelding race horse to E. O. Hopkins, as receiver of the Peoria, Decatur & Evansville Railroad, for shipment from Grayville, Ill., to Kokomo, Ind., which last-named station is in the county of Howard, and on the line of railroad operated by Samuel Hunt, as receiver; that the line of railroad operated by Hopkins, as receiver, was and is a connecting line with the railroad operated by said Hunt, as receiver; that said horses so delivered to Hopkins, as receiver, were consigned to George Schover, at Kokomo; that a certain contract and bill of lading was entered into between said Hopkins, as receiver, and the said petitioner, by the terms of which said Hopkins, receiver, for the sum of $32, agreed to carry said horses, together with other freight, to Kokomo, Ind., by way of the aforesaid railroad and the Toledo, St. Louis & Kansas City Line, operated by Hunt, as receiver; that the freight charged for said shipment was prepaid (a copy of the bill of lading or contract is filed with the petition, and is made a part thereof, and marked "Exhibit A"); that by the terms of the contract Hopkins, as receiver, agreed to safely deliver the horses at the point of destination; that the freight car containing said horses arrived at Kokomo on the night of July 22, 1900; that Hunt, as receiver, did not safely carry and deliver said race horses to the consignee at Kokomo, as agreed in said contract, but through the negligence and carelessness of said Hunt, as receiver, and his employés and agents, both of said horses were injured and rendered valueless; that upon their arrival at Kokomo the employés of Hunt, as receiver, in order to side-track the car containing the horses, made what is known as a "flying switch," and in so doing the car containing the horses was thrown violently against another car standing on the track upon which the said car containing the horses was run; that the car containing the horses was crushed in, and the horses were thrown down, torn loose from their fastenings, and

were permanently injured; that the horses were of great value as race horses, and by reason of said injury they are valueless as race horses or for any other purpose; that the two horses were reasonably worth the sum of $7,000; and that by the negligence and carelessness of Hunt, as receiver, and of his agents and servants, the petitioner has been damaged in the sum of $7,000, for which he prays judgment. The defendant answers in two paragraphs, and, as no question is made upon the first paragraph, it is not further noticed. The second paragraph of answer alleges that by the contract and bill of lading entered into between the intervener and Receiver Hopkins, and under and in accordance with the terms on which the horses were shipped, it was agreed between the parties that the said horses were received by Hopkins, as receiver, for transportation as therein provided, upon the terms and conditions in said contract and bill of lading specified, which were admitted and accepted by the said intervener; that in consideration of the limitation, terms, and conditions in said contract and bill of lading contained, and assented to and accepted by the intervener, the freight charge on said shipment to destination should be at the special rate of 32 cents per hundredweight; that it was further stipulated in said contract and bill of lading that in consideration of the guaranty of the aforesaid special rate, and in further consideration of the granting by Hopkins, receiver, of free transportation to one person to accompany said horses, Hopkins, as receiver, and this defendant, as operating a connecting line of railroad, should in no event be liable for injury to said horses in excess of the agreed valuation, upon which valuation the special rate for the transportation of said horses was based, viz. if stallions, not exceeding $200 each, and if horses, not exceeding $50 each, and, further, that if the final destination should be beyond the line of railroad of Hopkins, receiver, then all the terms, provisions, and conditions of said contract and bill of lading should extend to, and be for the benefit of, any connecting carrier receiving said shipment; that the intervener signed said contract and bill of lading, and assented to the terms and conditions thereof; and that even if said horses were injured as in said intervening petition set forth, which the receiver denies, he would be liable for the same only in the sum of $200 for the stallion and $50 for the gelding. To this paragraph of answer the plaintiff has demurred on the ground that the same does not state facts sufficient to constitute a ground of defense. In argument, counsel for the plaintiff insist that this paragraph of answer is bad because it professes to answer the whole complaint and to deny all liability, whereas it ought to have been pleaded as a partial answer, admitting liability to the extent of $250. It is further contended that the stipulation contained in the contract of affreightment is invalid because it seeks to relieve the defendant from liability for negligence. The stipulation in the contract is as follows:

"That said first party shall in no event be liable for said stock in excess of the following agreed valuation, upon which valuation is based the rate charged for transportation of said animals, namely: If stallion or jack, not exceeding $200 each; if horses or mules, not exceeding $50 each."

The second ground of objection is not tenable. The case of Hart v. Railroad Co., 112 U. S. 331, 5 Sup. Ct. 151, 28 L. Ed. 717, settles the question adversely to the contention of counsel for the plaintiff. In that case the plaintiff sued the railroad company to recover damages for injuries to a number of horses carried by it over its railroad under a special contract in which it was provided that the company assumed a liability on each horse not exceeding $200. The suit was to recover on account of the company's negligence, and the evidence disclosed that its negligence caused the injury. On the trial the plaintiff offered to prove that the horses were all valuable race horses, and by the loss of one which was killed, and the injury of the others, he was damaged in the sum of $25,000. The testimony was excluded, and a verdict and judgment rendered upon the basis of the limitation in value contained in the contract of affreightment. The plaintiff appealed, contending that the valuation in the contract and bill of lading was no limitation to his right to recover for any injury to his property which was the result of the company's negligence, upon the theory that the carrier is forbidden by public policy to fix a limit on its liability for a loss by its negligence at any amount less than the actual loss caused by such negligence. But the court say:

"This qualification of the liability of the carrier is reasonable, and is as important as the rule which it qualifies. There is no justice in allowing the shipper to be paid a large value for an article which he has induced the carrier to take at a low rate of freight on the assertion and agreement that its value is a less sum than that claimed after a loss. It is just to hold the shipper to his agreement, fairly made, as to value, even where the loss or injury has occurred through the negligence of the carrier. The effect of the agreement is to cheapen the freight and secure the carriage if there is no loss, and the effect of disregarding the agreement after a loss is to expose the carrier to a greater risk than the parties intended he should assume. The agreement as to value in this case stands as if the carrier had asked the value of the horses, and had been told by the plaintiff the sum inserted in the contract. The limitation as to value has no tendency to exempt from liability for negligence. It does not induce want of care. It exacts from the carrier the measure of care due to the value agreed on. The carrier is bound to respond in that value for negligence. The compensation for carriage is based on that value. The shipper is estopped from saying that the value is greater. The articles have no greater value, for the purposes of the contract of transportation, between the parties to that contract. The carrier must respond for negligence up to that value. It is just and reasonable that such a contract, fairly entered into, and where there is no deceit practiced on the shipper, should be upheld. There is no violation of public policy. On the contrary, it would be unjust and unreasonable, and would be repugnant to the soundest principles of fair dealing and of the freedom of contracting, and thus in conflict with public policy, if a shipper should be allowed to reap the benefit of the contract if there is no loss, and to repudiate it in case of loss."

The doctrine of this case is binding on this court. But the answer is bad because it undertakes to answer the whole complaint, and fails to state facts sufficient to constitute a complete defense to the whole cause of action. The defendant should have admitted his liability to the extent of $250, and pleaded the contract to relieve himself from liability for damages in excess of that sum. But, while the answer is bad, the demurrer to it cannot be sustained. A bad answer is good enough for a bad complaint. The complaint

in this case is founded on a special contract in writing. By the terms of that contract, made a part of the complaint, it was expressly agreed between the parties—

"That no claim for damages which may accrue to said second party [the petitioner] under this contract shall be paid by the said first party, or sued for in any court by the said second party, unless a claim of such loss or damage shall be made in writing, verified by the affidavit of the said second party or his or their agent, and delivered to the general freight agent of the said first party at his office in the city of Evansville, Indiana, within thirty days from the time said stock is removed from said cars, and that, if any loss or damage occurs upon a line of a connecting carrier, then the carrier shall not be liable, unless a claim be made in like manner and delivered in like time to some proper officer or agent of the carrier on whose line the loss or damage occurs."

In the complaint there is no allegation that the petitioner made a claim in writing, verified by affidavit, and delivered the same to some proper officer or agent of the receiver, Hunt. Nor does the complaint show any waiver or excuse for a failure so to do. An averment showing the making of the claim under oath, and the delivery of it as required by the contract, is a condition precedent and is necessary to constitute a good cause of action. In the case of Express Co. v. Harris, 51 Ind. 127, it was held that a provision requiring the presentation of a claim in writing at the office of the express company within 30 days was a reasonable requirement, in point of time. The court further said that the claim must be made in such case upon some agent or officer of the company chargeable with the loss. That such a stipulation is valid has been held in a number of cases cited by the court. See, also, Express Co. v. Caldwell, 21 Wall. 264, 22 L. Ed. 556; Railway Co. v. Ragsdale, 14 Ind. App. 406, 42 N. E. 1106. In Case v. Railroad Co., 11 Ind. App. 517, 519, 39 N. E. 426, the court, speaking of a stipulation requiring a claim to be presented in writing within 10 days from the time of the removal of the stock, say:

"That such a provision as we are considering, where reasonable, must be regarded as a condition precedent, performance of which must be alleged to make the complaint good, was decided in Express Co. v. Harris, 51 Ind. 127, followed by this court in Railroad Co. v. Widman, 9 Ind. App. 190, 36 N. E. 370. To the same effect is Railroad Co. v. Simms, 18 Ill. App. 68."

In Parill v. Railway Co. (Ind. App.) 55 N. E. 1026, 1031, it is said:

"So where, as here, there is a special contract providing a necessity for reasonable notice of claim, the giving of such notice or the presentation of such claim being a condition precedent, it is a part of the plaintiff's cause of action to show performance of this precedent obligation on his part, or to show the waiver of performance or of strict formality."

The general doctrine is thus stated in 5 Am. & Eng. Enc. Law (2d Ed.) p. 321:

"The same principles which justify a stipulation fixing the time within which a suit must be brought for a loss of or injury to goods apply to a stipulation requiring the shipper to present his claim in writing within the prescribed time, and such stipulations, where the time fixed is not unreasonable, are uniformly upheld."

This court knows of no case in which it has been held that a requirement that the claim should be filed within 30 days from the

delivery of the stock was held unreasonable in point of time. Indeed, many cases are to be found in the books holding that 10 days, or even a shorter period of time, is not unreasonable.

It results that the demurrer must be carried back to the intervening petition, and sustained thereto. The intervening petitioner is given leave to file an amended petition within 20 days herefrom, and, failing so to do, his intervening petition shall stand dismissed.