## SECURITY TRUST & LIFE INS. CO. v. STUART.

(Court of Civil Appeals of Texas. Amarillo. Jan. 3, 1914. On Motion for Rehearing, Jan. 31, 1914.)

1. APPEAL AND ERROR (§ 756*)—BRIEFS—FORM —STATUTES—NEW BRIEFS.

Where, at the time a cause was briefed for the Court of Civil Appeals, Act April 4, 1913 (Acts 33d Leg. c. 136), declaring that the assignments of error in the motion for new trial shall constitute the assignments on appeal, had been passed, but had not been published, and appellants' counsel were not aware of the same, an application to rebrief the cause in order to comply with such act would be allowed.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3091; Dec. Dig. § 756.*]

2. EVIDENCE (§ 271*)—SELF-SERVING DECLARATIONS—INDORSEMENT WITHOUT RECOURSE.

Plaintiff, an insurance agent, having sold a policy to B., and he not having paid the premium, plaintiff took his note therefor, which was sent to the insurer's state agent, and by him to the company. The note not being paid when due, plaintiff offered to pay the cost of term insurance on a transfer of the note to him, and for this purpose the state agent wrote a letter to the insurer's vice president, stating that plaintiff refused to pay the amount as promised, unless the company would indorse the note over to him, but was willing for the company to indorse without recourse to it. He also stated that he was returning the note to the company for proper indorsement to plaintiff without recourse, and asked for its return with a draft attached to a certain bank, which plaintiff agreed to take for the cost of the term insurance. Held that, the note not having been properly indorsed "without recourse," and plaintiff having sued the company on the indorsement, the letter was admissible to show that the transfer was in fact intended to be without recourse.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1068–1079, 1081–1104; Dec. Dig. § 271.*]

3. EVIDENCE (§ 378*) — DOCUMENTARY EVIDENCE—FOUNDATION.

In an action on a premium note indorsed by the payee to plaintiff, evidence *held* sufficient to show that a letter offered in evidence from the insurer's state agent to it negotiating the transfer, and stating that it was to be made without recourse, had been duly received.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1648–1655; Dec. Dig. § 378.*]

4. BILLS AND NOTES (§ 520*)—TRANSFER—INDORSEMENT WITHOUT RECOURSE—MISTAKE.

Where defendant insurance company transferred to its soliciting agent a note taken by him for a premium, after the note had been dishonored, in consideration of his paying the cost of the term insurance, evidence *held* to warrant a finding that the words "with recourse" following the signature of the company as indorser was a mistake, and that it was intended that the transfer should have been without recourse to the insurance company.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1813, 1832, 1836, 1837; Dec. Dig. § 520.*]

### On Motion for Rehearing.

5. EVIDENCE (§ 378*) — DOCUMENTARY EVIDENCE—INDORSEMENTS.

An indorsement on a letter, sent by an insurer's state agent to its home office, of the words, "Received June 11, 1906," was not of itself evidence of the receipt of the letter, in the absence of connecting proof that the party making the indorsement represented the insurance company, and had authority to make it.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1648–1655; Dec. Dig. § 378.*]

Appeal from Wilbarger County Court; J. B. Copeland, Judge.

Action by R. T. Stuart against the Security Trust & Life Insurance Company and one Bradley. From a judgment in favor of plaintiff, defendant Insurance Company appeals. Reversed and remanded, with directions as to defendant Insurance Company, and affirmed as to defendant Bradley.

See, also, 160 S. W. 108.

Cecil Storey and L. P. Bonner, both of Vernon, for appellant. W. D. Berry, of Vernon, for appellee.

HENDRICKS, J. [1] In this case the appellant, after the cause was set for submission, filed a motion, requesting a rebriefing of his cause, stating that, at the time the case was tried in the lower court and briefed by counsel, the act of April 4, 1913 (Acts 33d Leg. c. 136), declaring that the assignments of error in the motion shall constitute the assignments in the cause, was not published, and that counsel were not aware of the same. Accompanying the motion were new briefs, tendered by appellant, containing the assignments embraced in the motion for new trial, and which the appellee asks us to refuse to consider. We will permit the new briefs to be filed as a part of the cause, and will consider them in the review of the case. We can see no injury to appellee in pursuing this course, and upon inspection of the new briefs and the old briefs, and the original brief of appellee and his reply brief, the issues are tendered and met, and considerable injury could result to appellant by a suppression of the new briefs.

In October, 1904, R. T. Stuart, the appellee, was an agent and insurance solicitor for the appellant, the Security Trust & Life Insurance Company, and at the same time one S. L. Ewing, of Dallas, Tex., was the state agent for said company. At that time one Bradley was insured in said company, the policy having been solicited and sold by Stuart some time prior thereto, and Bradley, being unable to make a payment of a certain premium upon the policy, executed a note for the sum of $256.50 in favor of the company, maturing five months from date, and delivered by Stuart to the company. Stuart, on November 1, 1904, evidently in response to a letter from S. L. Ewing, the state agent, in regard to Bradley and the note, wrote Mr. Ewing that he "would stand for the term if the company was afraid of Bradley." Stuart, in using the word "term" in said letter, meant "term insurance" connected with said policy, which also meant the net cost of said insurance, which in this instance

was $55.50. In so far as the record shows, there was no direct response to this letter; however, in October, 1905, Stuart communicates to Mr. Ewing that Mr. Bradley did not make as much wheat as he expected, "but he will pay the term anyway, for I will see that he pays same, if possible, and I am confident he will." Some time in 1906 negotiations occurred between Stuart, the local agent, and Ewing, the state agent, in regard to the payment of the "term insurance" by Stuart and the transfer of the Bradley note by the company to Stuart in consideration of the payment of same. In pursuance of those negotiations, the note was indorsed by the insurance company to R. T. Stuart, as follows: "Pay to the order of R. T. Stuart. Security Trust & Life Insurance Company, I. C. Gaverick, Treasurer. With recourse."

The note, with its indorsement, was mailed to a bank at Vernon, Tex., with a draft evidencing the amount of the term insurance, $55.50, which was paid by Stuart, and on September 17, 1906, Stuart instituted this suit against Bradley and the Security Trust & Life Insurance Company, the appellant, upon the note.

The insurance company answers that the note was intended to be returned to the plaintiff indorsed "without recourse," but that, by mistake of the draftsman in making the indorsement, the same was left off of said note, and that plaintiff accepted it with knowledge of such mistake, and further pleads that "there was no consideration moving to it from plaintiff for the indorsement of the note except the payment of $55.50, which Stuart was obligated to pay, and which was not a consideration for the transfer," and that the "same was made at his request for his own benefit." The indorsement "with recourse" upon this note is an unusual one. It did not broaden the blank indorsement, nor did it restrict the same. Mr. Ewing, the state agent, testified that the note was to be indorsed without recourse; Stuart testifying to the opposite. The last negotiations, if we interpret the record correctly, between Stuart and Ewing were at Dallas, and whatever agreement was made was to be submitted by Mr. Ewing to the company at its home office for its acceptance and approval. Mr. Gaverick, the treasurer of the company testified that he placed the indorsement on the particular note, and "the indorsement which appears on the note is not the indorsement that was intended to be placed on same; the indorsement that was intended to be placed on the note was "without recourse."

[2] The appellant offered in evidence a letter written by Mr. Ewing to Geo. B. Luper, vice president and general manager of appellant, communicating the negotiations between himself and Stuart in regard to the latter paying the term insurance, and which contains the following: "He [meaning Stuart] refuses to pay the amount as promised, unless you will indorse the note over to him. He is perfectly willing for you to make it without recourse to yourself, but insists that he may have something against Mr. Bradley in order to get his money. * * * Now I am returning this note, and would ask you to make the proper indorsement to R. T. Stuart, without recourse, and send it to the Waggoner National Bank, Vernon, Texas, with the draft attached for the $55.50 on Mr. Stuart, and he has agreed to take it up." The introduction of this letter in evidence was objected to by appellee, and sustained by the court, on the ground that the letter was self-serving and an ex parte statement; the bill of exceptions showing that the letter was offered for the purpose of evidencing "the real basis for the company's indorsement of the note to Stuart, and as evidencing the agreement between defendant company, made by its agent, S. L. Ewing, and the plaintiff, R. T. Stuart, it having been admitted by plaintiff that he never made any agreement with any one about the purchase of the note except S. L. Ewing, agent." We think the letter was clearly admissible and a deprivation of a legal right to appellant. It may be that appellee had shown that he was not legally liable for the "term insurance" spoken of in this letter; but the evidence clearly indicates that the $55.50 paid by him was in the nature of idemnification to the company on account of the cost of this insurance carried for the term paid for by the note representing the premium. The policy had lapsed when the negotiations were consummated, and the note was long past due and unpaid. "A note indorsed and delivered after dishonor is between the indorser and indorsee a note on demand, and subject as such to the rules as to demand and notice." 2 Parsons, Bills and Notes, p. 13. Stuart was paying the amount of the term insurance for the note, and, the note having matured, it is unusual that a note for $256.50 would be sold for the sum of $55.50, with liability for immediate payment upon demand by the transferee. Appellant says that Ewing had testified to practically the same thing with reference to the contents of the letter, and the error, if any, was harmless. We think not.

It is true the appellee contends that the agreement to pay $55.50, the amount of the term insurance, and the payment of it, was a purchase of the note; but upon analysis of this record upon the question of its transfer, and considering all the testimony as to the agreement between these parties, we are inclined to think that the appellant was entitled to every "scrap" of material testimony which could be offered on its theory of the case, and the error was not a harmless one on account of other testimony, rather conduced, along the same line. This letter does not come within the rule of hearsay. We

believe a slight change in the status of this cause would demonstrate its admissibility: If the note were negotiable and transferred before maturity by the insurance company to Stuart, and the company were to attempt to enjoin, upon proper allegations, the transfer of said note by Stuart to an innocent purchaser, with allegations of reformation on account of the mistake, how would it prove its case, if the communications from its agent to it by letter of the proposition of Stuart were excluded from the record? Because the company is defending its liability upon the note upon the same grounds, we are unable to understand why the admissibility and pertinency of this testimony would be devitalized. To put Ewing upon the stand in the case mentioned, and prove its theory of the conditional agreement between Stuart and Ewing (amounting in reality to no more than an offer), and not allow Ewing to testify that he communicated the offer, would present a case, at least under some conditions, where a party had a contract, but could never prove it. In the case of Britt v. Burghart, 16 Tex. Civ. App. 78, 41 S. W. 390, this condition is presented: Burghart employed Britt and Easton, through his agent, D. A. Turner, to represent him as attorneys in the collection of some notes. Turner, the agent, testified on the stand that he made the agreement, but that he did not remember the whole agreement, "but that whatever it was he reported it immediately thereafter to Mr. Burghart, and to one Mr. Johnson." Thereupon Johnson was permitted to testify that "Turner represented to him and Burghart * * * the terms of the contract as agreed upon with Britt and Easton, that the latter would undertake the collection of the claims for the 10 per cent. stipulated in the notes if suit were brought, and for $25 if suit was unnecessary." The attorneys in that case employed by Burghart contended that a different contract was made with Burghart, and Chief Justice Tarlton said: "Under these circumstances we think the testimony of Turner and Johnson was admissible upon the question of the character of the contract, though Britt and Easton were not present when Turner stated to Johnson and Burghart what the terms of the contract were." We rather infer from the opinion in the case that the particular assignment passed upon by Judge Tarlton was really the turning point of the case, and we presume was in the application for writ of error, and the assignment was passed upon by the Supreme Court when the writ was denied. The analogy between the two cases as to the admissibility of the testimony we believe to be complete.

[3] Appellee says that no evidence was offered that the company ever received this particular letter. The letter was indorsed, "Received June 11, 1906," which, in connection with the statement of Ewing recited in the bill of exceptions, that he wrote the company the terms and conditions upon which he and Stuart agreed, and aided by the further statement in said bill that the letter identified by Ewing was the one written by him to said company, and was the only information possessed by it for the terms of the transfer for the note, with the further admission by plaintiff, as shown in said bill, that he never made an agreement with any one except Ewing with reference to this matter, and all this, taken in connection with the testimony of the treasurer of the company, we think tended to show the receipt of said letter by it. We do not think that the record shows that the transfer of this note is without consideration, for the reason that it does not show affirmatively that Stuart, in paying the amount of the "term insurance" for the transfer of the note, was paying an amount which in law he was obligated to pay.

However, upon a careful consideration, without extending the limits of this opinion, and without presenting a development of the testimony, and the inferences therefrom, we are of opinion that upon the introduction and proper proof of the letter from the state agent, Ewing, to the company, and its receipt by it, and that it was the only presentation to that company upon which it acted of an agreement for the transfer of said note, and the record is the same upon another trial as in this as to other proof, the trial court should peremptorily instruct a verdict for defendant.

[4] With this proof and no countervailing testimony showing that any different proposition was ever submitted to the insurance company, this court is convinced that, when the treasurer of the company wrote "with recourse" following the indorsement in blank upon the said note, the same was a mistake, and that it was intended to write "without recourse" in conformity with the proposition submitted by Ewing. Whatever the conflict may be between Stuart and Ewing, as to the proposition submitted by Stuart to Ewing, does not destroy the cogency of the proof in this record as to the proposition submitted by Ewing to the company and the mistake the company made with reference to the indorsement upon the back of the note. If that be true, appellee's cause of action would have to sound differently than the form exhibited in this record for relief against said company for any amount.

This cause is reversed, and remanded, with directions, without disturbing the judgment against Bradley, which is affirmed.

### On Motion for Rehearing.

[5] In our original opinion in this cause we noted an indorsement upon a letter purported to have been written by S. L. Ewing, the state agent of the insurance company, to George B. Luper, vice president and general manager of said company, communicating

the negotiations between himself and Stuart in regard to the payment of the term insurance, and the transfer of the note sued upon in this cause, and upon said letter was the indorsement, "Received June 11, 1906." We suggested in our opinion that this indorsement, taken in connection with other testimony, tended to show the receipt of the letter by the insurance company. Upon reconsideration, we are inclined to think, as presented by the bill of exceptions and the record, that said indorsement on said letter would not be admissible testimony, unless connection was made with reference to the proper party representing the insurance company making said indorsement. However, we still think that the testimony was ample upon the receipt of the letter by the insurance company, considering Ewing's evidence that it was the sole communication in regard to this matter, and with reference to which the appellant company intended to act when the indorsement was written upon the back of the note, and the transfer of same was made to Stuart.

The motion is in all things overruled.

HALL, J., disqualified, not sitting.