CHICAGO, R. I. & G. RY. CO. v. WHALEY.
(No. 762.)

(Court of Civil Appeals of Texas. Amarillo. April 3, 1915. On Motion for Rehearing. May 8, 1915. Motion to Certify Denied June 5, 1915.)

1. COURTS &em;165 — JURISDICTION — COUNTY COURT—PLEADING.

Where the aggregate of the items of damage set out in the petition is less than $800, but the prayer was for judgment for the sum of $1,000, with interest thereon, the prayer does not claim an amount in excess of the jurisdiction of the court, since the interest claimed is on the judgment, not on the damages.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 413–425, 428–436, 443, 456, 458, 465; Dec. Dig. &em;169.]

On Motion for Rehearing.

2. COMMERCE &em;8—INTERSTATE COMMERCE—CONTRACTS—LAW GOVERNING.

The United States statutes and the decisions of the United States courts control the interpretation of contracts for interstate shipments.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 5; Dec. Dig. &em;8.]

3. CARRIERS &em;218 — CARRIAGE OF LIVE STOCK — BILL OF LADING — REQUIREMENTS FOR NOTICE.

A requirement in the bill of lading for an interstate shipment of live stock that the shipper shall give notice of injury or damage to an agent of the carrier within one day after arrival and before the stock are removed from the yards, or mingled with other stock, is unreasonable and not binding when no reduced rate therefore is shown, it does not appear that there was any agent of the carrier at the point of destination to whom the notice could be given, and the damage claimed is the decrease in the market during the time the shipment was delayed.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 674–696, 927, 928, 933–949; Dec. Dig. &em;218.]

Hendricks, J., dissenting.

Appeal from Sherman County Court; J. W. Elliott, Judge.

Action by G. T. Whaley against the Chicago, Rock Island & Gulf Railway Company. Judgment for the plaintiff, and defendant ap-

peals. Affirmed, and motion for rehearing overruled.

N. H. Lassiter, of Ft. Worth (Moore & Powell, of Dalhart, and Gustavus & Jackson, of Amarillo, of counsel), for appellant. Jno. H. H. Stahl, of Stratford, for appellee.

HALL, J. This is a stock shipping case. Two cars of the stock were shipped separately to Kansas City and one to Ft. Worth. The Chicago, Rock Island & Gulf Railway is the initial carrier, and the Ft. Worth & Denver City Railway is not made a party defendant.

Plea in abatement, alleging misjoinder of parties and causes of action, was urged in the lower court and overruled, and this is made the basis of the first assignment. The evidence showed that the initial carrier was not responsible for any of the damages to the Ft. Worth shipment, but that all the delay and injury occurred on the line of the Ft. Worth & Denver City Railway Company. Suit is brought against appellant upon the written contract of carriage for the first two shipments, and appellee sought to recover for the last shipment upon appellant's common-law liability. The first, second, and third assignments have been abrogated by a remittitur filed in this court of the full amount of damages recovered for the last shipment.

The fourth assignment insists upon a reversal because no written notice was given, as required by the contract, before the cattle were removed and mingled with other cattle at point of destination. This provision in the contract is the usual condition found in bills of lading precluding shippers from recovering damages for any loss or injury to or detention of stock or delay in transportation thereof unless the shipper should, as soon as he discovered said loss or injury, promptly give notice thereof in writing to some general officer, claim agent, or station agent of the receiving carrier, or to the agent at destination or to some general officer of the delivering line, before such stock is removed from the yards at destination, and before it is mingled with other stock, and further providing that such written notice should be served within one day after the delivery of the stock at destination, in order that such claims might be fully and fairly investigated.

Appellee having eliminated the intrastate question by a remittitur of the amount recovered upon the intrastate shipment, the question arises and must be determined by the rule announced by the federal courts. It is held in Clegg v. St. L. & S. F. Ry. Co., 203 Fed. 971, 122 C. C. A. 273, that a stipulation of this kind in a shipping contract for an interstate shipment is valid if made in consideration of a lower rate of freight. The rule, however, as announced in this state in so far as we have been able to learn, with

reference to stipulations of this character, does not apply to damages occasioned by a depreciation in the market price due to the failure of the carrier to deliver the stock seasonably. Pecos & Northern Texas Ry. Co. v. Evans-Snyder-Buel Co., 100 Tex. 190, 97 S. W. 466; Sou. Kas. Ry. Co. v. Curtis, 44 Tex. Civ. App. 477, 99 S. W. 566. It is further held in this state that such a stipulation is unreasonable, invalid, and unenforceable if it does not state the name of an agent upon whom such notice may be served. Galveston, etc., Railroad Co. v. Short, 25 'S. W. 142. See, also, 4 R. C. L., Carriers, §§ 454, 455, 457.

Appellant did not allege and prove that the shipments were made upon a reduced freight rate, nor did the contract set out the name of any agent or other party upon whom such notice might have been served. The decisions referred to above, by the courts of this state, are not in conflict with the holding of the federal court in the construction of this clause of such contracts, and the fourth assignment is overruled.

[1] Appellants suggest fundamental error in that appellee sues for $1,000, with interest thereon. Reference to the petition shows that the aggregate sum of the various items, as set out in the body of the pleading, is $739.44. It is true that the ad damnum clause lays the damage at $1,000. The prayer is:

"Wherefore, plaintiff prays judgment against defendant for the sum of $1,000, with interest thereon, as provided by law, and all costs of suit."

This prayer is almost identical with that discussed in the case of Pecos & Northern Texas Ry. Co. v. Rayzor (Sup.) 172 S. W. 1103, in which Judge Phillips has held that it did not claim an amount above the jurisdiction of the county court, since it prayed for interest upon the judgment and not upon the amount of the damages.

Finding no reversible error, the judgment is affirmed.

### On Motion for Rehearing.

[2, 3] We agree that since Congress has taken possession of the subject of common carriers in matters of interstate shipment, the United States statutes and the decisions of the federal courts should control in regard to the interpretation of shipping contracts and application of the rules of law to cases arising upon interstate contracts, but we do not agree that the tendency of the federal courts and the great weight of authority of other courts is in favor of the validity and reasonableness, under all circumstances, of the stipulation contained in this contract, with reference to giving notice of damages before the stock are removed from the point of shipment, etc. In our opinion, Clegg v. St. Louis & San Francisco Ry. Co., 203 Fed. 971, 122 C. C. A. 273, and the Metropolitan Trust Co. v. Toledo, St. L. & K. C. R. Co. (C.

C.) 107 Fed. 628, do not hold that such a stipulation is reasonable, under any and all circumstances, and we think it would be a dangerous precedent for the courts to establish any such doctrine. So far as we have been able to find, the Supreme Court of the United States has never passed directly upon the question here presented. The Clegg Case shows that the validity of the agreement to give the notice was sustained upon consideration of the fact that the shipper had received a lower freight rate than was usually granted shippers. No such fact was set up by the appellant in this case. It is true that the opinion declares the provision in the contract, with reference to notice, to be valid, and states that a failure to give the notice is fatal to plaintiff's right to recover. In the case of Metropolitan Trust Co. v. Railway Co. (C. C.) 107 Fed. 628, it was simply held that the failure of the shipper to give notice of his claim for damages within the 30 day period provided in the contract was a reasonable requirement; and Pac. S. S. Co. v. Bancroft-W. Co., 94 Fed. 180, 36 C. C. A. 135, holds such requirement unreasonable as a matter of law. A case could rarely ever arise where the damages sustained by the shipper could not be ascertained with reasonable certainty within 30 days from the time the shipment reached its destination; and the contracts in those cases are so different from the one now under consideration as to render the cases themselves inapplicable here. The case of Kidwell v. Oregon Short Line Ry. Co., 208 Fed. p. 1, 125 C. C. A. 313, involved the same question which we are now considering; and, while the stipulation was held to be reasonable in that case, it is clear that the federal court based the holding upon the fact that the Supreme Court of Oregon had previously announced such a rule. That the stipulation might be or become unreasonable is clearly recognized in the Kidwell Case, by this language, found in the opinion:

"There was nothing in the circumstances, as disclosed by the record in the case at bar, to render the requirement of the notice negligible or impracticable, as in the case of C. R. I. & P. Ry. Co. v. Spears, 31 Okl. 469 [122 Pac. 228]."

We must infer from this language that the validity of the notice and its binding effect might have, under favorable circumstances, been declared by the federal court to be unreasonable. In Ormsby v. Union Pacific Ry. Co. (C. C.) 4 Fed. page 170, it is said:

"As to the last clause of the answer [of the appellee], which may be taken to be an independent answer in itself, that sets up a provision in the contract that for injuries to the animals shipped over the line of the road the owner should make a demand in writing on the agent of the company before removing them from the place of destination, or from the place of delivery. It may be that for some injuries this clause in the agreement would be effectual; but here, according to the charge of the complaint, the injury was illness of the animals, which could hardly be discovered until they

should be removed from the car; and this clause in the contract would require the parties to hold them at the depot grounds, I suppose, until they could ascertain whether they were in good condition or not. That would be very unreasonable indeed. As to such matters as are charged in the complaint— an illness occurring to animals, the extent of which could not be known until they should be removed from the car, and probably not for some little time after their arrival here—it may be said that this clause in the agreement is of no effect; that the railroad company could not make any such provision in respect to stock shipped over their line. The demurrer will be sustained to the last clause or paragraph, or whatever it may be called, of the answer, and overruled to the other."

It seems that this is the only clear enunciation by any federal court touching the question under consideration. The state courts differ materially upon this question, but the rule is settled in Texas, by Missouri Pacific Railway Co. v. Harris, 67 Tex. 166, 2 S. W. 574, and other subsequent cases. We think, in the absence of a definite holding by the Supreme Court of the United States to the contrary, we should adhere to the rule governing such stipulations as announced by Judge Stayton, in the Harris Case, as follows:

"The answer must present a defense to the case made by the petition. If the answer does not show that, under the facts existing, the limitation on the carrier's liability sought to be imposed by the special contracts was reasonable in its character, then the answer was not sufficient, and the court below properly sustained the demurrer. If a carrier sets up a claim to notice of a given fact, as a condition upon which its liability to a shipper is to depend, then it is incumbent upon it, when the notice was to be given to one of its own officers or agents, to show that it had an officer or agent at or near the place where the notice is to be given, in any case in which the shipper, by the terms of the contract through which notice is claimed, is to hold the property shipped at the place of delivery * * * until it can be inspected by some agent of the carrier. This would be especially true when the property to be inspected is intended for immediate sale at the place of destination, is perishable in character, likely to deteriorate in value by holding, and expensive to keep. If in such case the carrier has not an officer or agent at or near the place where the property to be inspected is delivered, so that notice may be promptly given and an inspection, if desired, speedily made, then a contract requiring notice to be given to an officer or agent of the carrier is not reasonable in its character. The contract to give notice was not the entire contract; the notice was required to be given to an officer or the nearest station agent of the carrier, and the situation of such officer or agent, with reference to the place from which the notice must necessarily come, and at which an inspection, if desired, would necessarily have to be made, would largely determine whether the contract was reasonable or not. The answer should have shown that the carrier had an officer or agent so situated that the contract to give notice to such officer or agent was reasonable. Under the averments of the petitioner, the place of delivery was beyond the line of appellant's railway, in another state, and no presumption can arise that the carrier had an officer or station agent near the place of destination. If the contract were even valid, whether reasonable

or not, the shipper would be bound by its terms; but where its validity depends upon its being reasonable, the party who asserts its validity must allege the facts which make it so. It may well be doubted if such a contract as is relied on in this case ought ever to be sustained. If a carrier seeks to make its liability depend on notice to its officer or agent of a claim for damages, it would seem that the responsibility of determining who is an officer or agent of a carrier, within the meaning of the contract, should not be cast upon the shipper, but that the person and his locality to whom the notice must be given ought to be made certain by the contract itself, and especially so when the carrier is a corporation and the property is to be delivered beyond the line of its road through another carrier. We are of the opinion that there was no error in sustaining the demurrers to the answers setting up the defenses we have noticed."

We think the law applicable to stipulations of this character is correctly stated in 4 R. C. L., Carriers, p. 795, § 253:

"The one essential of stipulations of this nature is that they be reasonable; that is, however, purely relative, and a stipulation perfectly reasonable under one state of facts would be quite unreasonable under another. Whether in any particular case the stipulation under consideration is valid is therefore dependent on the peculiar facts and circumstances of that case, the chief query being whether sufficient time has been given to enable the shipper to discover the loss and give notice thereof, this again being largely dependent on distances and the facilities of communication. From the very nature of such a requirement, it is evident that no helpful general rule can be laid down. * * * Where the damage done is not for any reason apparent or capable of being estimated within the time provided for giving notice, it seems that the provision for notice will be held unreasonable, as a carrier cannot reasonably require that the shipper shall give notice of a claim for damages before the injury, or its extent, can be discovered by the latter in the exercise of due diligence."

The motion is overruled.

HENDRICKS, J., dissents for the reasons stated in his opinion filed in the case of C., R. I. & G. Ry. Co. v. Dalton, 177 S. W. 556.