ATCHISON, T. & S. F. RY. CO. v. SMYTH
et al. (No. 1029.)

(Court of Civil Appeals of Texas. Amarillo.
Oct. 18, 1916.)

1. CARRIERS ☞227(3) — CARRIAGE OF LIVE
STOCK—ACTIONS—PLEADING.

Under Rev. St. 1911, art. 7093, providing
that a contract in writing shall import consideration, in an action against a carrier of live
stock for delay in furnishing cars pursuant to
an alleged oral agreement, where the answer alleged a subsequent written contract for the
transportation, which released damages occasioned by the oral contract and superseded all
previous agreements, it was incumbent upon
plaintiff to allege and prove want of consideration for the written agreement.

[Ed. Note.—For other cases, see Carriers,
Cent. Dig. § 956; Dec. Dig. ☞227(3).]

2. CARRIERS ☞207(3) — CARRIAGE OF LIVE
STOCK—CONTRACT.

Where shippers of live stock orally contracted for cars for shipment knowing that a
written contract would be required, and with
the purpose of executing such contract, and
thereafter they did so, they are bound by its
terms.

[Ed. Note.—For other cases, see Carriers,
Cent. Dig. §§ 207, 209; Dec. Dig. ☞207(3).]

3. CARRIERS ☞227(2) — CARRIAGE OF LIVE
STOCK—ACTIONS—DEFENSES.

In an action against a carrier for breach of
an oral agreement to furnish cars for an interstate shipment of live stock, a plea alleging a
written contract into which was merged all
previous negotiations for the cars, and which
stipulated for notice, and that suit should be
brought within six months or plaintiffs' cause of
action should be barred, set up a good defense
in the absence of a showing that there was no
consideration, or that there was duress, fraud,
or mistake in procuring the written contract.

[Ed. Note.—For other cases, see Carriers,
Cent. Dig. § 954; Dec. Dig. ☞227(2).]

4. COMMERCE ☞8 — INTERSTATE COMMERCE—
CONTRACTS—LAW GOVERNING.

The Interstate Commerce Act (Act Feb. 4,
1887, c. 104, 24 Stat. 379) and its amendments,
as construed by the Supreme Court of the United States, will control the interpretation of a
written contract for an interstate shipment of
live stock.

[Ed. Note.—For other cases, see Commerce,
Cent. Dig. § 5; Dec. Dig. ☞8.]

5. COMMERCE ☞8—CARRIAGE OF LIVE STOCK
—NOTICE OF CLAIM—CONTRACT.

A written contract for the interstate transportation of live stock requiring notice to an
agent of the carrier, before the stock shall have
been removed from the place of delivery, slaughtered or intermingled with other stock, of a
claim for damage, and that the stock shall not
be removed before the expiration of three hours
from the giving of such notice, is valid under
the Interstate Commerce Act and amendments,
the laws of Texas to the contrary notwithstanding.

[Ed. Note.—For other cases, see Commerce,
Cent. Dig. § 5; Dec. Dig. ☞8.]

6. CARRIERS ☞218(1) — CARRIAGE OF LIVE
STOCK — TIME FOR BRINGING SUIT — CONTRACT.

A provision of the contract requiring suit
to be instituted within six months is valid under the Interstate Commerce Act and amendments.

[Ed. Note.—For other cases, see Carriers,
Cent. Dig. §§ 674–696, 933–935, 939; Dec. Dig.
☞218(1).]

7. CARRIERS ☞207(3) — CARRIAGE OF LIVE
STOCK — BILL OF LADING — "TRANSPORTATION."

Under Interstate Commerce Act Feb. 4,
1887, c. 104, § 1, 24 Stat. 379 (U. S. Comp.
St. 1913, § 8563), providing that the term
"transportation" shall include cars and all
facilities of shipment, etc., and that it shall be
the duty of every carrier to furnish such transportation upon reasonable request, and the
amendment of section 20 (section 8592), providing that a transportation company receiving
property shall issue a receipt or bill of lading
therefor, and other provisions of the act including section 6 (section 8569), where a written contract made by plaintiff in consideration
of reduced rates for the shipment of live stock
expressly covenants that all prior understandings to furnish cars are merged and contained
in the writing, and stipulating suit for damages
shall be brought within six months, the conditions of liability for failure to furnish cars on
the date provided by the previous oral understanding as stipulated in the bill of lading or
contract are controlling, and the parties cannot substitute therefor a special agreement, so
that the plaintiff cannot recover on the alleged
oral contract.

[Ed. Note.—For other cases, see Carriers,
Cent. Dig. §§ 207, 209; Dec. Dig. ☞207(3).

For other definitions, see Words and Phrases,
First and Second Series, Transportation.]

8. EVIDENCE ☞65—PRESUMPTION — KNOWLEDGE OF THE LAW.

The shipper of an interstate shipment is
charged with knowledge of the law that a written bill of lading will be issued, which will include all terms and conditions of the transportation, that there were tariff rates fixed, and that
they must include the rate for the entire transportation, and that there was a lower and a
higher rate.

[Ed. Note.—For other cases, see Evidence,
Cent. Dig. § 85; Dec. Dig. ☞65.]

9. CARRIERS ☞69(3) — CARRIAGE OF LIVE
STOCK—EVIDENCE—ADMISSIBILITY.

In an action against an interstate carrier
for damages for delay in providing cars pursuant to an alleged oral agreement between
plaintiff and the carrier's agent, where it was
claimed that the agent would not make an agreement for a definite date until he got in touch
with the dispatcher, and that upon receipt of
such information he would advise plaintiffs if
they would call, and that the plaintiffs never
did call for such information, evidence that the
dispatcher advised the agent immediately by
wire that the cars could not be furnished on the
date desired by the shipper was admissible.

[Ed. Note.—For other cases, see Carriers,
Cent. Dig. §§ 222, 235–237; Dec. Dig. ☞
69(3).]

10. CARRIERS ☞218(7) — CARRIAGE OF LIVE
STOCK—ACTIONS—PLEADING.

A paragraph of the contract providing that
in case plaintiff's stock were damaged, he cannot claim an amount exceeding the stipulated
value of the stock which was $30 per head,
pleaded as a defense, will not defeat a recovery
of damages for injury to the cattle, or support
the contention that their value must be reduced below $30 per head before recovery can
be had for an injury.

[Ed. Note.—For other cases, see Carriers,
Cent. Dig. §§ 674–696, 946; Dec. Dig. ☞
218(7).]

Appeal from District Court, Potter County; Hugh L. Umphres, Judge.

Action by June Smyth and others against
the Atchison, Topeka & Santa Fé Railway

Company. Judgment for plaintiffs, and defendant appeals. Reversed and remanded.

Terry, Cavin & Mills, of Galveston, and Madden, Trulove, Ryburn & Pipkin, of Amarillo, for appellant. R. R. Hazlewood and A. A. Lumpkin, both of Amarillo, for appellees.

HUFF, C. J. The appellees June Smyth and Lee Bivins allege: That they were damaged by reason of delay in failing to furnish cars on time for 430 steers at a station named Riverton. That there was no regular agent at that place, but it was used principally for shipping cattle over the line of road, and that the nearest station thereto where an agent was kept was at Pecos, 25 miles from Riverton. That Smyth, on December 19, 1912, called upon the agent at Pecos, and informed him that he desired to ship the steers from Riverton to Amarillo, Tex., over the appellant's line of road and certain connecting lines on December 21st. The agent informed Smyth that it would be inconvenient to get sufficient cars before December 23d. That it was then agreed between himself and the agent that appellees would hold the cattle until the 23d; and the agent instructed Smyth to have the steers at Riverton ready for shipment by the morning of the 23d, and that appellant would have sufficient cars there at that time for the shipment. In pursuance to the agreement the cattle were placed in the pens at Riverton during the night of December 22d, and were held there until the afternoon of December 24th, constantly expecting a train to arrive for the loading of the steers, when the appellant notified the appellee for the first time that it would have the cars there on the morning of December the 25th. The appellees thereupon took the steers out of the pen and drove them to the river for water, a distance of about 1½ miles, and also drove them about 6 miles to graze on the 24th; and on the night of the 24th they were again placed in the pen, and that on the morning of the 25th, at 10 o'clock a. m. were loaded out by appellant's agents, to be shipped to Amarillo, Tex. It is alleged the cattle were damaged $6 per head, by reason of being held at Riverton from the 23d until the 25th of December, and on account of having no water except alkali water, and an insufficient amount of grass at that point. This was the only damages claimed. The petition further shows that the initial point of the shipment was in Texas, thence through New Mexico, and thence again into Texas, to Amarillo.

The appellant denied generally the allegation and made certain specific denial. The answer, in paragraph 15a, alleges that a written contract was entered into at Orter, Tex., on December 25, 1912, wherein it was expressly agreed by the parties thereto that it should supersede all previous negotiations between the parties, and that appellees expressly waived any claim for damages which they might have for anything that transpired prior to the execution of such contract, and set out the paragraph, which is as follows:

"It is distinctly agreed that all prior understandings concerning the furnishing of cars or facilities for said shipment, or concerning the transportation of said stock or said shipment, are hereby merged and contained in this written agreement, and this written agreement contains all the terms, conditions and provisions relating in any manner to the shipment or transportation of said stock; and said shipper hereby expressly waives all claims for damages arising from the breach of any prior agreement with respect to the transportation of said stock or the furnishing of cars therefor, and hereby releases the company from any and all liability therefor. That said contract was based upon a valid consideration and determines the rights and liabilities of the parties, and that thereby all such negotiations, etc., were merged into such written contract, and that thereby plaintiff specially waived any claim for damages which he might have by reason of the facts set forth in his petition filed herein, and defendant pleads such contract and release in bar of plaintiff's right to recover in this suit."

By paragraph 16 it is alleged that it was contemplated by the parties that such a contract would be executed and should govern and determine the rights of the parties, and was based upon a valid consideration. The appellant pleaded said contract and each and every paragraph thereof, and especially the following provisions contained therein, among other things:

"1. Paragraph 3 of said contract provides that in case plaintiff's stock were damaged or if plaintiff should suffer loss or damage from any cause for which the railway company might be held liable, then plaintiff should not claim an amount exceeding the stipulated value of said steers; that said stipulated value as provided by the written terms of the contract and as provided by the declared value of such live stock was the sum of $30 per head; that plaintiff's cattle were transported on such reduced valuation at a cheaper rate than if such valuation had not been reduced. By reason whereof plaintiff is not entitled to recover any damages so long as the valuation per head was not reduced below said amount of $30 for each steer contained in the shipment, and defendant pleads said paragraph 3, in bar of plaintiff's right to recover herein.

"2. That in paragraph 8 of said written contract above referred to it is further provided that 'in order that any loss or damage to be claimed by the shipper may be fully and fairly investigated, and the fact and nature of such claim or loss preserved beyond dispute and by the best evidence, it is agreed that as a condition precedent to his right to recover any damage for any loss or injury to his said stock during the transportation thereof, or at any place or places where the same may be loaded and unloaded for any purpose on the company's road or previous to loading thereof for shipment, the shipper or his agent in charge of this stock will give notice in writing of his claim therefor to some officer of said company, or to the nearest station agent, or if delivered to consignee at a point beyond the company's road, to the nearest station agent of the last carrier, making such delivery before such stock shall have been removed from the place of destination above mentioned, or from the place of delivery of the same to the consignee, and before such stock shall have been slaughtered or intermingled with other stock, and will not move said stock from

such station or stockyards until the expiration of three hours after the giving of such notice, and failure to comply in every respect with the terms of this clause shall be a complete bar to any recovery of any and all such damages, the written notice herein provided for cannot and shall not be waived by any person except a general officer of the company and he only in writing.' Defendant says that such notice in writing was not given the defendant or any of its connecting. carriers or to the delivering carrier or to any of its or their agents during the transportation of said stock and before the removal of same from the stockyards at destination, and that the first notice of any character was a notice in writing received by this defendant's agent at Amarillo, Tex., from plaintiff Lee Bivins, on or before about the 29th day of December, 1912. By reason thereof, plaintiffs are not entitled to maintain this suit or to recover any damages against this defendant, and defendant pleads said contract, and especially said paragraph 8 thereof, in bar of plaintiff's right to recover herein.

"3. Paragraph 9 of said written contract provides: 'It is further agreed that no suit or action against the company for the recovery of any damages accruing or arising out of said shipment, or any contract pertaining to the same, or of furnishing facilities for such shipment, shall be sustained in any court of law or equity, unless such suit or action shall be commenced in six months after the loss or damage shall have occurred. The failure to institute suit within said time shall. be deemed conclusive evidence against the validity of such claim or cause of action, and shall be a complete bar to such suit.' Defendant, says that plaintiffs' suit was not filed within said period of six months and until long thereafter; that said suit was first filed by plaintiffs by the filing of their original petition herein August 28, 1913, more than eight months after the alleged loss and damage occurred, and defendant pleads such stipulation in said contract in bar of plaintiffs' right to recover herein."

The appellees presented a general exception to paragraphs 15a and 16, and special exceptions thereto: (1) Because the answer alleges the transportation under a certain contract; the petition alleges their cause of action to be a failure to furnish cars at the time agreed upon, and that defendants admit in their answer that it was an oral agreement, and that the answer, setting up the contract, is immaterial and irrelevant. (2) That the allegations are immaterial for the reason that appellees sought no damages after the cattle were loaded and after signing the contract, but only such as accrued upon appellant's failure to comply with the oral agreement to furnish cars. (3) Because it is not alleged therein that appellant would be liable for any injury to the cattle if the loss occasioned was not less than $30 per head. (4) Because the cause of action is for failure to furnish cars, and not damages in course of transportation. (5) For the reason the facts alleged in said paragraph and in subdivision No. 3, if true, are in contravention of the laws of the state of Texas, and therefore void.

The trial court sustained each and all of the above exceptions, thereby eliminating paragraphs 15a and 16 of the answer.

This shipment, as shown by the pleadings, was an interstate shipment, as defined by the Supreme Court of the United States, and the parties to this appeal admit also that it is an interstate shipment.

By assignments the appellants set up the action of the trial court in sustaining the several exceptions. It will be noted the answer alleges that the written contract superseded all previous negotiations between the parties,. and that the appellees expressly waive any claim for damages prior to the execution of the contract, and further set out that all prior understandings concerning the furnishing of cars or facilities for the shipment were merged and contained in writing, which contained all the conditions relating in any manner to the shipment, and that the shipper waived all claims for damages from the breach of any previous agreement, with reference to the shipment or furnishing cars, and released thereby the company from any liability therefor.

[1] It is also alleged that the contract is based upon a valid consideration. If there was no consideration for the contract, releasing damages occasioned by breach of the contract to furnish cars, it was incumbent upon appellees to allege and prove the want of consideration under the statute. The writing itself inports a consideration, and the plea setting up the release could not be stricken out upon exception. Article 7093, R. C. S.; Warren v. Gentry, 21 Tex. Civ. App. 151, 50 S. W. 1025; Railway Co. v. Shirley, 62 Tex. Civ. App. 158, 130 S. W. 687.

[2] It is also alleged 'that at the time the cars were ordered it was contemplated by the parties thereto, based upon a valid consideration, that the written contract set up would be executed and would govern and determine the rights of the parties. If the shippers ordered the cars with the understanding that such a contract would be required and with the purpose of executing such a contract, and thereafter they did so, they should be bound by its terms. Railway Co. v. Adams, 182 S. W. 365; Turner v. Henderson, 183 S. W. 51; Railway Co. v. Halsell, 36 Tex. Civ. App. 522, 81 S. W. 1243, and authorities cited; Railway Co. v. Hudson, 188 S. W. 277.

[3, 4] The plea having alleged a written contract into which was merged all previous negotiations for cars, stipulating for notice and that suit should be brought within six months or appellees' cause of action should be barred, set up a good defense in the absence of plea and proof that there was no consideration, duress, fraud, or mistake in procuring a written contract. This is true whether or not an oral contract could be made for cars for an interstate shipment. Under the pleadings, a contract was- made which required notice and the institution of suit in six months. This being an interstate shipment, the act of Congress on the subject will control, as construed by the Supreme Court of the United States.

[5] The stipulation for notice provided for in the eighth paragraph is valid under the act

of Congress, the laws of Texas to the contrary notwithstanding. Railway Co. v. Wall, 241 U. S. 87, 36 Sup. Ct. 493, 60 L. Ed. 905.

[6] The question of the burden of proof is not here involved, as held by a majority of this court in Railway Co. v. Whatley, 177 S. W. 543; Railway Co. v. Dalton, 177 S. W. 556. The provision of the contract requiring suit to be instituted within six months is also valid. Railway Company v. Harriman, 227 U. S. 657, 33 Sup. Ct. 397, 57 L. Ed. 690.

[7] If we understand appellees correctly their contention is that the cause of action declared on is for the breach of contract to furnish cars on a certain date, and not for damages to cattle in transportation; or, in other words, that such contract and breach do not fall under the term "transportation." If such contention is correct it will logically follow that the bill of lading or receipt could not legally, under the Interstate Commerce Act, require notice of or suit for the damage on account of the breach of the contract to furnish cars in a specified time. Section 1 of the Interstate Commerce Act defines transportation as to railroads:

"And the term 'transportation' shall include cars and other vehicles and all instrumentalities and facilities of shipment or carriage, irrespective of ownership or of any contract, express or implied, for the use thereof and all services in connection with the receipt, delivery, elevation, and transfer in transit, ventilation, refrigeration or icing, storage, and hauling of property transported; and it shall be the duty of every carrier subject to the provisions of this act to provide and furnish such transportation upon reasonable request therefor, and to establish through routes and just and reasonable rates applicable thereto."

And under the amendment of section 20, a transportation company receiving property "shall issue a receipt or bill of lading therefor, and shall be liable," etc.

These provisions, together with others, especially section 6 of the act, state what is meant by interstate transportation, and the liability and duty of a common carrier with reference thereto. It is the duty of the carrier to provide and furnish such transportation upon reasonable request. This clearly includes cars and other instrumentalities in connection with the receipt, etc., of the property transported. Congress has taken charge of the entire shipment from the request for cars or other instrumentalities, until finally delivered at destination. This therefore supersedes state statutes and all decisions of state courts contrary thereto. The rule established by the Supreme Court of the United States with reference to such shipments must therefore govern. The agreement to furnish cars on a given date for interstate shipments properly falls under that law. The contract here expressly covenants that all prior understandings to furnish cars "are hereby merged and contained in this writing." Paragraph 9 also provides that if suit is not brought within six months it shall be conclusive evidence

against the validity of the claim for any damages arising out of the shipment, "or any contract pertaining to same or furnishing facilities for such shipment"; and as the furnishing of cars and facilities for the shipment of the property are within the federal act, and the conditions of liability for the failure to furnish cars on the date provided for by a previous understanding are stipulated in the bill of lading, the conditions thus fixed are controlling, and the parties cannot substitute therefor a special agreement. Railway Co. v. Prescott, 240 U. S. 632, 36 Sup. Ct. 469, 60 L. Ed. 836; Railway Co. v. Dettlebach, 239 U. S. 588, 36 Sup. Ct. 177, 60 L. Ed. 453.

In the Prescott Case, supra, it is said:

"Viewing the contract set forth in the bill of lading as still in force, the measure of liability under it must also be regarded as a federal question. As it has often been said, the statutory provisions manifest the intent of Congress that the obligation of the carrier with respect to the services within the purview of the statute shall be governed by uniform rule in the place of the diverse requirements of state legislation and decisions," citing authorities. "And the question as to the responsibility under the bill of lading is none the less a federal one because it must be resolved by the application of general principles of the common law."

In the Dettlebach Case, supra, it is said:

"We recognize the cogency of the reasoning from the standpoint of the common-law responsibility of a railway company as carrier and as warehouseman. But we have to deal with the effect of an express contract, made for the purpose of interstate transportation, and this must be determined in the light of the act of Congress regulating the matter. The question is federal in its nature."

If we shall look to the contract offered in evidence in this case and rejected by the trial court, we find this provision:

"The rate given under this contract is lower than the rate made by the railway and connections for transportation of stock at carrier's risk, and without limitation of liability, and is based upon the conditions, agreements, found in this contract and upon the valuation therein fixed. The shipper, by accepting this contract, is deemed to accept the lower rate upon the terms and conditions specified as part of the contract."

Again quoting from the Dettlebach Case:

"The provision that we have quoted from the contract is to the effect that 'every service to be performed thereunder' is subject to the conditions contained in it."

Again it is said in that case:

"It is no longer open to question that if the loss had occurred in the course of transportation upon defendant's line, the limitation of liability agreed upon with the initial carrier, as this was, for the purpose of securing the lower of two rates of freight, would have been binding upon plaintiff, in view of the Carmack Amendment."

As stated by us, appellee seeks to eliminate the order or contract for cars from the contract of transportation, and thereby relieve it from the conditions stipulated in the bill of lading. The Dettlebach Case further holds, after quoting the provisions of section 1, heretofore set out by us:

"From this and other provisions of the Hepburn Act it is evident that Congress recognized that the duty of carrier to the public included the performance of a variety of services that, according to the theory of the common law, were separable from the carrier's services as carrier, and, in order to prevent overcharges and discriminations from being made under the pretext of performing such additional services, it is enacted that, so far as interstate carriers by rail were concerned, the entire body of such services could be included together under the single term of 'transportation,' and subjected to the provisions of the act respecting reasonable rates and the like."

So it is seen from the act the order for the car falls under the term "transportation," which must be included in the rate charged for the entire service to be performed. This may not have fallen under the carrier's service at common law, yet under the act of Congress it is embraced therein. The parties having entered into a written contract, including that service "as subject to the conditions containing it," the very purpose of Congress would be thwarted in securing a uniform rule "in place of the diverse requirements of such legislation and decisions" if transportation, as defined by Congress, is to be split up by the contract for cars and for the actual trip or voyage. In this state the provision for notice before removal of the cattle and the limitation with regard to instituting suit less than the statutory period is void. Our courts also hold a contract to furnish cars is not included in the term "transportation," and is not therefore governed by the conditions of the bill of lading. Other jurisdictions are at variance with our holding. The manifest purpose of Congress is nugatory if the various rulings are to be adhered to by the various courts. The duty is therefore to follow the ruling of the Supreme tribunal when that ruling is ascertained, whatever may have been the rulings of this or other state courts. It occurs to us the two cases above cited settle the question that the agreement to furnish cars falls under the term "transportation."

[8] The shipper is charged with a knowledge of the law, and that a written bill of lading will be issued, which would include all the terms and conditions of the transportation; also that there were tariff rates fixed, and what they were and that they must include the rate for the entire transportation in order to prevent discrimination by separating the various services. He was also charged with knowledge that there was a lower and a higher rate. Railway Co. v. Wall, 241 U. S. 87, 36 Sup. Ct. 493, 60 L. Ed. 905. His contract in this case is upon consideration of the lower rates, whereby he agrees to all the conditions and stipulations set out in the bill of lading.

In view of the ruling of the trial court on the exceptions, the fourth, sixth, seventh, eighth, and ninth assignments should be overruled. The court, in our judgment, however, erred in sustaining the exceptions, and it follows that if the pleadings are sufficient the testimony offered, which is set up under these assignments, should have been admitted after overruling the exceptions to the pleadings.

The tenth assignment should be overruled. We believe under the authorities of this state and others the testimony here complained of was admissible.

The eleventh and twelfth assignments are also overruled. The testimony raised the issue submitted.

[9] We are inclined to believe the fifth assignment should be sustained. According to appellant's contention, it was understood that the agent could not or would not make an agreement for a definite date for the cars until he got in touch with the dispatcher and ascertained when stock cars could be furnished at Riverton; and upon receipt of such information he would advise the appellees, if they would call for the information, and until advised he could not fix a day certain. That appellees never did call for such information. Owens, the dispatcher, was offered to testify that he advised the agent immediately by wire that the cars could not be furnished on the 23d; that it would probably be a day or two later before the cars could be furnished. This and some other evidence of like nature was excluded on the objection that it was hearsay, immaterial, and irrelevant. According to appellant's contention, this was part of the transaction and agreement, and entered into the very terms of the understanding of the parties. The fact that the dispatcher so communicated to the agent under the alleged agreement according to appellant was to be communicated to appellees when called for, would throw light on the transaction, and under the facts of this case we believe it was admissible. Security Trust, etc., v. Stuart, 163 S. W. 396; Britt v. Burghart, 16 Tex. Civ. App. 78, 41 S. W. 389; Memphis Cotton Oil Co. v. Goode, 171 S. W. 284.

We may properly conclude this opinion by quoting from appellant's concluding remarks: "We are aware of the fact that the appellate courts of this state have gone very far in enforcing oral contracts of shipment and in avoiding the effect of written contracts; but we have not noticed any case denying the railway company the privilege of setting up the provisions of the written contract as a defense and of introducing evidence thereon. The trial court in this case holds that the carriers cannot even plead that character of defense. Every provision in the shipping contract pleaded by appellant has been held valid by the courts of the United States, and this court as well as other Courts of Civil Appeals have in effect held such provisions valid, but have affirmed the action of the trial courts in submitting the issue as to the existence of an oral contract, independent of the written contract."

[10] We believe the court was in error in sustaining the exceptions to the appellant's answer, as contained in paragraph 15a and 16, and in striking them out; however, the second special exceptions urged against the allegation of paragraph 3 of the contract and

relied upon as a defense, in our judgment should be sustained. While if the allegations were true the appellees could not recover for the cattle a greater value than $30 per head, this would not in our judgment prevent recovery for damages occasioned by their injury. The proposition that their value must be reduced below $30 per head before recovery could be had for an injury we believe to be unsound. As pleaded, this paragraph will not defeat a recovery of damages for injury to the cattle. There may be some question as to the proper measure of damages under such contract.

The case, for the reasons pointed out, will be reversed and remanded.