# NORTHERN PACIFIC RAILWAY CO. *v.* WALL, ADMINISTRATOR.

**ERROR TO THE SUPREME COURT OF THE STATE OF MONTANA.**

No. 350.   Argued December 1, 1915.—Decided April 24, 1916.

Laws, in force at the time and place of the making of a contract and which affect its validity, performance and enforcement, enter into and form a part of it, as if expressly referred to or incorporated therein.

A bill of lading is a contract; and, if interstate, it is to be construed in the light of the provision of the Carmack Amendment, which prescribes how it shall be issued and makes the connecting carrier the agent of the receiving carrier for the purpose of completing the transportation and delivering the goods.

Whether in construing an interstate bill of lading issued under the Carmack Amendment due effect is given to the latter is a Federal question.

A stipulation in a bill of lading of an interstate shipment of cattle that the shipper must, as a condition precedent to his right of recovery for injury to the cattle while in transit, give notice thereof in writing to some officer or station agent of the initial carrier before the cattle are removed from the place of destination or mingled with other live stock, is to be construed in the light of the Carmack Amendment making the connecting or delivering carrier agent of the initial carrier; and notice given to the station agent or officer of the former operates as notice to the latter, and the fact that there is no officer or station agent primarily employed by the initial carrier at the point of destination does not relieve the shipper from compliance with the stipulation.

50 Montana, 122, reversed.

THE facts, which involve the right of a shipper to recover from the carrier damages for injury to cattle being transported in interstate commerce owing to delay in transit and resulting decrease in weight, are stated in the opinion.

*Mr. Charles Donnelly* for plaintiff in error.

*Mr. Thomas J. Walsh*, with whom *Mr. Walter Aitkin* was on the brief, for defendant in error.

MR. JUSTICE VAN DEVANTER delivered the opinion of the court.

This was an action to recover for injuries to cattle being transported in interstate commerce, the gravamen of the complaint being that the cattle were unreasonably delayed in transit and consequently were greatly reduced in weight and emaciated in appearance.

The cattle were shipped in January, 1912, from Belgrade, Montana, to the Union Stock Yards at Chicago over two connecting railroads—the Northern Pacific and the Burlington—under a through bill of lading issued by the initial carrier. The shipment was at a reduced rate based upon the stipulations in the bill of lading. The rate and the bill of lading had been regularly established and put in force under the Interstate Commerce Act and its amendments. One stipulation was to the effect that the shipper, as a condition precedent to his right to recover for any injury to the cattle while in transit, should give notice in writing of his claim to some officer or station agent "of said company" before the cattle were removed from the place of destination or mingled with other stock; and another was to the effect that the terms of the bill of lading should inure to the benefit of any connecting carrier over whose line the cattle should

pass in the course of their transportation.  By an endorsement on the bill of lading the Burlington Company was designated as the connecting carrier.  The shipment was accompanied by an attendant selected by the shipper and authorized to represent him in all matters pertaining to the general care and handling of the cattle.  Upon reaching their destination the cattle were delivered by the Burlington Company to an agent of the shipper and were sold, removed and mingled with other stock before any notice was given of a claim for injury to them while in transit.

This action was brought against the initial carrier— the Northern Pacific Company—and the damages sought were for alleged injuries to the cattle while passing over both roads.  In its answer the defendant set up the stipulations before named; insisted that they were established under the Interstate Commerce Act and that a Montana statute invalidating such stipulations was, as applied to bills of lading in interstate commerce, in conflict with the congressional enactment and void; alleged that no notice of any claim for injury to the cattle had been given "to any officer or station agent of the defendant, or to any officer or station agent of the connecting carrier," until after the cattle had been removed from the place of destination and mingled with other stock, and claimed that by reason of the failure to give the stipulated notice the plaintiff was not entitled to recover.  In his reply the plaintiff, while expressly admitting that he had not complied with the stipulation relating to notice, denied that it was established or effective under the Interstate Commerce Act, insisted that it was unreasonable and in contravention of the Montana statute, alleged that compliance with the stipulation had been waived by the defendant, and set forth at length and invoked the Carmack Amendment to the Interstate Commerce Act in support of the effort to recover from the initial carrier

for the injuries occurring while the cattle were on the line of the connecting carrier. Upon the trial, and after the evidence was concluded, the defendant moved for a directed verdict in its favor upon the ground that the contract embodied in the bill of lading was valid, that confessedly the notice "required by the contract" was not given, and that there was no evidence showing a waiver of the notice. The motion was denied upon the ground that under the evidence the question of waiver was for the jury, and an exception was reserved by the defendant. At its request the court in charging the jury said: "One of the defenses relied upon by the defendant is that no notice of claim for damages for loss or injury to the stock in question was given by the plaintiff to the defendant or to the connecting carrier, before the stock was removed from the place of destination or mingled with other stock. This provision of said contract is a reasonable one, binding upon the plaintiff, and under the admissions in his reply, prevents him from recovering in this action, unless you find that . . . defendant expressly or impliedly by its conduct waived the giving of said notice in accordance with this provision of the contract." The jury, evidently resolving the question of waiver against the defendant, returned a verdict for the plaintiff, and the judgment thereon was affirmed by the Supreme Court of the State. 50 Montana, 122.

From what has been said it is apparent not only that the damages sought were for injuries occurring while the cattle were being transported in interstate commerce but also that both parties relied upon the Interstate Commerce Act and its amendments—the plaintiff to sustain his right to recover for the injuries on the line of the connecting carrier and the defendant to sustain its defense based upon the stipulations in the bill of lading. And it is plain that the trial court gave controlling effect to that act and its amendments, for otherwise the instruc-

tion upholding the validity of the stipulation for notice could not have been given, in the presence of the Montana statute (Laws 1909, c. 138) declaring such a stipulation void.

The Supreme Court, passing the question whether notice had been waived, interpreted the stipulation as requiring that the notice be given to an officer or station agent primarily employed by the Northern Pacific Company; and thereby excluding notice to an officer or station agent of the Burlington Company, and then held the stipulation unreasonable and inoperative because no officer or agent primarily employed by the Northern Pacific Company was accessible at the place of destination. Whether in so interpreting the stipulation that court gave proper effect to the Interstate Commerce Act and its amendments is the Federal question pressed upon our attention, and we think it is fairly presented by the record. The shipment being interstate, that legislation was controlling; the through bill of lading was issued under it; the pleadings show that its application was invoked; and in the answer, as also in the instruction given at the defendant's request, there was a distinct assertion that notice was not given "to any officer or station agent of the defendant, or to any officer or station agent of the connecting carrier," which meant that the defendant was proceeding upon the theory that the stipulation, when read in connection with the Carmack Amendment, contemplated and recognized that notice to an officer or agent of the connecting carrier—the Burlington Company—would suffice.

As this court often has held, the laws in force at the time and place of the making of a contract, and which affect its validity, performance and enforcement, enter into and form a part of it, as if they were expressly referred to or incorporated in its terms. *Von Hoffman* v. *Quincy*, 4 Wall. 535, 550; *Walker* v. *Whitehead*, 16 Wall. 314, 317; *Ed-*

*wards* v. *Kearzey*, 96 U. S. 595, 601. A bill of lading is a contract and within this rule. The Carmack Amendment to the Interstate Commerce Act (§ 7, c. 3591, 34 Stat. 584, 593), which was in force when this bill of lading was issued, directs a carrier receiving property for interstate transportation to issue a through bill of lading therefor, although the place of destination is on the line of another carrier; subjects the receiving carrier to liability for any injury to the property caused by it or any other carrier in the course of the transportation, and requires a connecting carrier on whose line the property is injured to reimburse the receiving carrier where the latter is made to pay for such injury. Thus, under the operation of the amendment, the connecting carrier becomes the agent of the receiving carrier for the purpose of completing the transportation and delivering the property. *Atlantic Coast Line* v. *Riverside Mills*, 219 U. S. 186, 196, 206; *Galveston &c. Ry.* v. *Wallace*, 223 U. S. 481, 491. This bill of lading was issued under that statute and should be interpreted in the light of it. *Cleveland & St. Louis Ry.* v. *Dettlebach*, 239 U. S. 588, 593. The shipment was to pass over both roads in reaching its destination; the delivery at that place was to be made, as in fact it was, by an officer or station agent of the connecting carrier; and the stipulated notice was to be given before the cattle were removed from the place of destination or mingled with other stock, that is, while it was yet possible from an inspection of them to ascertain whether the claim of injury, if any, was well founded. In these circumstances it seems plain that the stipulation meant and contemplated that the notice might be given at the place of destination to an officer or station agent of the connecting carrier, and that notice to it, in view of its relation to the initial carrier, should operate as notice to the latter. This interpretation treats the stipulation as designed to be fair to both shipper and carrier, permits it to serve a useful purpose and gives

due effect to the statute under which it was issued. True, the words "said company" in the stipulation, if read only in connection with an introductory sentence in the bill of lading, would seem to refer to the initial carrier alone, but when they are read in connection with the statute and other parts of the bill of lading, including the provision that its terms and conditions "shall inure to the benefit of" any connecting carrier, it is apparent that they embrace the carrier making the delivery as well as the initial carrier, especially as the former is in legal contemplation the agent of the latter.

The act of March 4, 1915, c. 176, 38 Stat. 1196, altering the terms of the Carmack Amendment is without present bearing, because passed long after this shipment was made.

We are of opinion that the Supreme Court of the State failed to give proper effect to the Carmack Amendment in interpreting the bill of lading and that the judgment should be reversed and the cause remanded for further proceedings not inconsistent with this opinion.

*Judgment reversed.*

Mr. Justice McReynolds with whom Mr. Justice McKenna concurred, dissenting.

For two reasons I am unable to agree with the opinion of the court.

*First.* If reiteration can establish a rule of law, it must be taken as settled that in causes coming here by writs of error from state courts of last resort we may not consider Federal questions not specially set up below. And further, that such a question comes too late if raised for the first time after final decision in the highest state court by petition for rehearing unless this was actually entertained. *St. Louis & San Francisco R. R.* v. *Shepherd,* 240 U. S. 240, 241; *McCorquodale* v. *Texas,* 211 U. S. 432, 437.

The following recitals are parts of the bill of lading:

Par. 6. "The said shipper further agrees that as a condition precedent to his right to recover any damages for loss or injury to any of said stock, he will give notice in writing of his claim therefor to some officer or station agent of the said Company before said stock has been removed from the place of destination or mingled with other stock."

Par. 9. "The terms, conditions and limitations hereby imposed shall inure to the benefit of each and every carrier, beyond the route of said Company, to which the said property may come for purpose of transportation."

A rehearing was denied by the Supreme Court of Montana in this brief order: "Appellant's motion for a rehearing herein heretofore submitted is after due consideration by the court denied." An elaborate written argument filed there in support of the petition and incorporated in the record, states:

"Appellant did not brief nor argue the reasonableness of the provisions of paragraph 6 of said contract from the view point considered by the court on page 3 to line 5 of page 7 of the opinion, for the reason that no such question was raised by the plaintiff in the court below. In fact the only grounds upon which the defendant attacked said provisions of the contract in his answer was that it 'is unreasonable, unjust, burdensome against the policy of the law and contrary to the express provisions of chapter 138 of Session Laws of the State of Montana for 1909.' Not until his brief was filed in this court did such question appear in the case.

"In view of the provision of paragraph 9 of the contract, also of plaintiff's position in the court below, and of the fact that the defendant company has always considered that a notice served upon 'some officer or station agent' of the connecting carrier at point of delivery in the manner required by paragraph 6 of the contract, was a sufficient

notice to show a compliance with such provision in an action brought against the initial carrier, we did not consider the question as presented for the first time in respondent's brief of any importance and did not even reply thereto in our oral argument.

"Under section 9 of said contract the terms and conditions thereof inure to the benefit of the connecting carrier. Therefore, such notice should be given to some officer or station agent of such carrier at point of delivery when damages are claimed.

"The importance of this is apparent when considered in connection with the Carmack Amendment to the Interstate Commerce Law."

The only ground for reversal now seriously relied upon is that the Carmack Amendment (June 29, 1906, § 7, c. 3591, 34 Stat. 584, 593) made "the connecting carrier, and therefore its agents, the agents of the initial carrier," and consequently the court below wrongly held, because no officer or station agent primarily employed by Northern Pacific Railway was shown to have been in Chicago, paragraph six was unreasonable and inoperative, and notice to a Burlington agent would not have been effective for any purpose. I fail to find that this point was definitely raised at any stage prior to the application for rehearing; and counsel for the railroad below seem to have been equally unsuccessful. If they had already wittingly relied upon it, they would hardly have burdened their argument for rehearing with an excuse for failure so to do. Former opinions imperatively demand that the foundation for our jurisdiction be laid in plain view and not around a corner where only an esoteric eye can detect it. *Seaboard Air Line* v. *Duvall*, 225 U. S. 477, 487.

*Second.* "The bill of lading itself is an elaborate document, bearing on its face evidences of care and deliberation in the formation of the conditions of the liability of the companies issuing it. The language is chosen by the com-

panies for the purpose, among others, of limiting and diminishing their common law liabilities, and if there be any doubt arising from the language used as to its proper meaning or construction, the words should be construed most strongly against the companies, because their officers or agents prepared the instrument, and as the court is to interpret such language, it is, as stated by Mr. Justice Harlan, in delivering the opinion of the court in *National Bank* v. *Insurance Co.*, 95 U. S. 673, 679: 'Both reasonable and just that its own words should be construed most strongly against itself.'" *Tex. & Pac. Ry.* v. *Reiss*, 183 U. S. 621, 626.

Apparently the bill under consideration followed a form adopted before passage of the Carmack Amendment or at least before this was adequately understood. It is dated "Belgrade, Montana, Station, January 2, 1912," purports to be an "agreement, made the day above stated between the Northern Pacific Railway Company, hereinafter called the 'Company,' and R. J. Wall, hereinafter called the 'Shipper,'" and contains, in addition to paragraphs 6 and 9 copied above, the following ones:

Par. 7. "It is further agreed and provided that no suit or action to recover any damages for loss or injury to any of said stock, or for the recovery of any claim by virtue of this contract, shall be sustained by any court against said Company unless suit or action shall be commenced within sixty (60) days after the damage shall occur, and on any suit or action commenced against said Company after the expiration of said sixty (60) days, the lapse of time shall be taken and deemed conclusive evidence against the validity of said claim, any statute to the contrary notwithstanding."

Par. 8. The "said Company shall not be liable for the non-delivery or loss of, nor for injuries suffered by any of the stock beyond the line of its own railroad."

Commenting on paragraph 6, the Supreme Court of Montana said (50 Montana, 127):

"If the paragraph above means anything, it required the shipper to give notice in writing to an officer or station agent of the Northern Pacific Company. Notice to an agent of the Burlington road would not have been effective for any purpose. The *company* mentioned in paragraph 6 is defined by the preamble to the contract to mean the 'Northern Pacific Railway Company.' Furthermore, if this provision is valid, it must be so construed as to serve some purpose. Its evident purpose was to enable the carrier to investigate the condition of the stock, and to that end the shipper was required to keep them separate until such investigation was made or a reasonable time therefor had elapsed. By the facts before us the reasonableness of the provision is to be tested. The contract is silent upon the question of service of the notice. If personal service was necessary, the shipper was required to hold the cattle at the Union Stock Yards until he could find an officer or station agent of the Northern Pacific Company. No particular officer or station agent is designated, and if this provision is to be taken literally, the shipper was required at his peril to assume the burden of finding some person who answered the description given. There is not a suggestion in the contract, in the pleadings or the proof, that the Northern Pacific Company had an officer or station agent at Chicago, or nearer than St. Paul, the eastern terminus of its road—more than 400 miles away. If service could have been made by mail, plaintiff would have been in no better position, though doubtless a letter written to the station agent at Belgrade, and mailed postpaid at Chicago, would have sufficed for a literal compliance with the terms of this provision. But in any event, plaintiff would have had to bear the burden of keeping his cattle on the cars or in the Stock Yards until the notice had been received and a reasonable time for inspection

had elapsed. If the paragraph in question be construed to mean that a written notice mailed from Chicago to any station agent of the Northern Pacific Company, even the agent at Seattle, would suffice, it is senseless. If it is construed to mean that the shipper should travel from Chicago to St. Paul and make personal service of the notice upon an officer or station agent of the Northern Pacific Company, then it is unreasonable to the point of being unconscionable. Whether the company had an officer or station agent at Chicago—at a point where it has no road—upon whom service of this notice could have been made, was a matter peculiarly within its own knowledge, and for this reason the burden was upon it to make proof of such fact."

Manifestly its language has given rise to a very grave doubt; therefore I think the contract should be construed most strongly against the company and with a view to preserve shipper's rights. The construction placed upon paragraph 6 by the state Supreme Court, when sitting within surroundings designed to stimulate clear thinking, is diametrically opposed to the one now adopted. In such circumstances it appears to me hardly reasonable to say that a stockman at a wayside Montana station was bound instantly to apprehend the true interpretation, notwithstanding any mental quickening which he may have received from a "rough wind" and a modest thermometer pointing to only "seven or eight degrees below zero."

I am authorized to say that Mr. Justice McKenna concurs in this dissent for the second reason stated.