**EAST TEXAS MOTOR FREIGHT LINES, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 16183.**

United States Court of Appeals
Fifth Circuit.

Dec. 14, 1956.

O. D. Montgomery, of Callaway, Reed, Kidwell & Brooks, Dallas, Tex., for appellant.

John C. Ford, Asst. U. S. Atty., Dallas, Tex., Heard L. Floore, U. S. Atty., Fort Worth, Tex., for appellee.

Before RIVES, TUTTLE and CAMERON, Circuit Judges.

CAMERON, Circuit Judge.

The question here presented is whether the requirement in an interstate bill of lading that claims of damage must be filed in writing with the carrier within nine months [1] is valid and whether it is rendered inoperative when the carrier acquired from other sources knowledge that the shipment was damaged. Appellee, the United States, was awarded judgment against appellant, East Texas Motor Freight Lines, for damages to an interstate shipment of machinery, the District Court holding upon stipulated facts that the "bill of lading notice in writing was unnecessary * * * if and when the carrier knew that the damage had actually occurred to the shipment which it had carried." [2] (Execution

1. The shipment was damaged in an accident November 25, and was delivered to the consignee December 4, 1951. No notice of claim was given or claim filed by appellee until July 14, 1954.

2. Appellant filed two civil actions to recover freight charges in the total amount of $12,376.75 on shipments transported for appellee during the years 1954 and 1955. Appellee answered admitting that appellant was entitled to recover the amount sued for.

Appellee filed a counterclaim in each action based upon its claim that it had suffered net loss in the exact amount involved in the two actions ($12,376.75) by reason of injury and damage, while in the hands of appellant, to certain ma-

thereon was withheld because appellee had recouped the full amount claimed by it, by failing to pay freight charges due appellant.)

 We think this holding was, under the facts of this case, contrary to the law as established in an unbroken line of decisions of the Supreme Court holding that this requirement of notice [3] is valid and must be observed by shippers and carriers alike. The stipulated facts show that the asserted knowledge on the part of appellant consisted of two writings copies of which were furnished to appellee by appellant in a letter of October 27, 1953. The first was an accident report [4] detailing the facts of the accident and estimating the damage to the machinery at $200.00. The second was a "Report of Loss or Damage to Freight Inspected After Delivery" made by D. Glaser, Inspector of Steffke Freight Com-

pany, covering his inspection of the shipment at Chicago, Illinois, evidently made at the time of delivery of the shipment by appellant to Central Wisconsin Motor Transport, the delivering carrier.[5] This knowledge acquired by the carrier does not, in our opinion, have the effect of releasing appellee from the obligation of complying with the provisions as to notice set forth in the contract of carriage.

 Laws in force at the time and place of making of a contract enter into and form a part of it as if they were expressly incorporated in its terms, and a bill of lading is a contract within this rule. Northern Pac. Ry. Co. v. Wall, 1916, 241 U.S. 87, 91–92, 36 S.Ct. 493, 60 L.Ed. 905. The parties to the bill of lading were, therefore, bound by its terms, insofar as they are not inconsistent with the Interstate Commerce Act [6] and applicable court decisions.

chinery shipped in November, 1951 from Shreveport, Louisiana to Beaver Dam, Wisconsin. Appellant answered admitting all of the averments of the counterclaim, but claimed that it was not liable to appellee for said damages by reason of its failure to file claim in writing within nine months after delivery of the property to the consignee.

3. The pertinent provisions of § 2 B of the bill of lading are: "As a condition precedent to recovery, claims must be filed in writing with the receiving or delivering carrier, or carrier issuing this bill of lading, or carrier in possession of the property when the loss, damage, or injury or delay occurred, within nine months after delivery of the property * * *." •

4. "Truck 137–1070. Date of accident: Nov. 25, 1951. Report of Accident Involving Company Equipment Only. Driver's name: Lee Poe Address: 2202 Victor, St. Louis, Mo. * * * Place of accident: ETMF lot, St. Louis, Mo. Time 11:00 am. Weather: Rainy. Condition of road: Wet Type of Road, Gravel lot * * * Extent of cargo damage: * * * Approximately $200.-00. ;

"Driver's Statement. The load on the trailer shifted to one side. To park the trailer I had to jacknife the tractor slightly. Due to the load being on one side it caused the trailer to tip over

slightly. It was resting on one wheel and one wheel off ground when I left it. Later they hooked a chain onto the trailer to pull it back up and about the time the chain became tight it came loose and the trailer turned on over. The damage to the unit was about $50.00 * * *."

5. This inspection report was on a printed form and first set forth a response that the damage was such that it could have been noticed at time of delivery, and that the machinery was not improperly boxed, crated, or packed. The damage was then described: "Cast Iron Door Cover of Elec contrl broken; cast iron door on hydrolic box smashed; cast iron over for gear box broken; cover gear housing broken; 5 niples from hydrolic control broken; elec. control panel broke loose, wired to machine; 1 hydrolic line loose."

6. 49 U.S.C.A. § 20(11). The notice requirement quoted in fn. 3 supra is inferentially sanctioned by the proviso making unlawful "a shorter period for the filing of claims than nine months."
 The parties concede that § 20(11) applies to appellant, a Motor Carrier. Cf. 49 U.S.C.A. §§ 301, 306; United States v. Pennsylvania R. Co., 1945, 323 U.S. 612, 616, 65 S.Ct. 471, 89 L.Ed. 499, and Sun Insurance Office Limited of London v. Be-Mac Transport Co., Inc., 8 Cir., 1942, 132 F.2d 535, 537.

One of the early Supreme Court decisions [7] construing this clause involved a carload of flour which had become wet in transit. Upon discovery of this condition the consignee rejected the shipment and the railroad " 'retook possession of the car and unloaded it, and in a few days sold, as perishable property, a part of the flour * * *.' " In upholding and defining the effect of the provision that damage claims must be filed within a specified time, the Supreme Court used this language:

"* * * the transactions of a railroad company are multitudinous, and are carried on through numerous employees of various grades. Ordinarily the managing officers, and those responsible for the settlement and contest of claims, would be without actual knowledge of the facts of a particular transaction. The purpose of the stipulation is not to escape liability, but to facilitate prompt investigation. And, to this end, it is a precaution of obvious wisdom, and in no respect repugnant to public policy, that the carrier by its contract should require reasonable notice of all claims against it even with respect to its own operations [241 U.S. at pages 195–196, 36 S.Ct. at page 544.] * *

"But the parties could not waive the terms of the contract under which the shipment was made pursuant to the Federal act; nor could the carrier by its conduct give the shipper the right to ignore these terms which were applicable to that conduct, and hold the carrier to a different responsibility from that fixed by the agreement made under the published tariffs and regulations. A different view would antagonize the plain policy of the act and open the door to the very abuses at which the act was aimed * * *." 241 U.S. at page 197, 36 S.Ct. at page 544.

The Supreme Court, speaking through Mr. Justice Holmes, held categorically that actual knowledge on the part of the carrier's employees would not dispense with the requirement of notice of claim. Gooch v. Oregon Short Line R. Co., 1922, 258 U.S. 22, 24, 42 S.Ct. 192, 193, 66 L. Ed. 443. Involved there was the stipulation that a drover accompanying a cattle shipment could not recover for personal injuries unless notice of his claim was given the general manager of the carrier within thirty days of the accident. He was injured in a wreck and was confined to the hospital about thirty days, and no notice of his claim was given. The Supreme Court approved a judgment denying recovery because of such failure, saying: "Of course too, actual knowledge on the part of employees of the company was not an excuse for omitting the notice in writing. St. Louis, Iron Mountain & Southern Ry. Co. v. Starbird, 243 U.S. 592, 37 S.Ct. 462, 61 L.Ed. 917." [8]

Each time the question has been presented to the Supreme Court it has held that the object of the Interstate Commerce Act and of requiring tariffs, contracts and regulations to be filed with the Commission by carriers was to insure uniformity of treatment to shippers with respect to all pertinent aspects of dealings between them and the carriers, and

7. Georgia F. & A. Ry. Co. v. Blish Milling Co., 1916, 241 U.S. 190, 36 S.Ct. 541, 543, 60 L.Ed. 948.

8 Starbird involved a claim against the carrier for failing properly to refrigerate several carloads of peaches moving from Arkansas to New York City. The Trial Court held reasonable the requirement that notice of claim be given within thirty-six hours of delivery, but permitted recovery because "there was proof in the case to show the knowledge of the superintendent of the dock of the Pennsylvania company, where delivery was made" and that, therefore, "the necessity of notice was dispensed with, notwithstanding the requirement of the bill of lading." The Supreme Court reversed, stating that [243 U.S. 592, 37 S.Ct. 468]: "The supreme court of Arkansas erred in holding that verbal notice to the dockmaster of the condition of the peaches was a compliance with the terms of the contract."

no decisions of that Court are cited to the contrary.[9]

We applied the notice provision here involved to government shipments in United States v. Chicago, R. I. & P. R. Co., 5 Cir., 1952, 200 F.2d 263, 264, pointing out that this standard clause in commercial bills of lading had as its purpose " 'to provide for the ascertainment of liability before the means of proof should be lost * * *.' " That decision was rested in part on Northern Pac. R. Co. v. Mackie, 9 Cir., 1952, 195 F.2d 641, 643, which involved not only validity of the notice requirement, but the question whether knowledge on the part of the carrier would excuse failure to comply with the provisions of the bill of lading.

The facts of Mackie are quite like those here. A shipment of plywood had been damaged in transit to such an extent that it was refused by the consignee and the railroad disposed of the shipment at a net loss of $1,177.71. The shipper discussed the loss with the chief clerk in the carrier's freight claim department, advising that he intended to file claim as soon as the exact loss could be determined. The claim was not filed within nine months, and was rejected on that ground, and the Court of Appeals sustained the carrier's action citing many of the Supreme Court cases above mentioned and announcing this as the general rule distilled from them: "A vital purpose of the Interstate Commerce Act is to prevent preferences and discrimination by carriers as among shippers. For the carrier to disregard the condition precedent to recovery incorporated in the bill of lading here would, under the circumstances shown, open the door to evasions of the spirit and purpose of the Act in the respects mentioned * * *."

Appellee stakes its chief reliance on Hopper Paper Co. v. Baltimore & Ohio R. R. Co., 7 Cir., 1949, 178 F.2d 179, certiorari denied 339 U.S. 943, 70 S.Ct. 797, 94 L.Ed. 1359,[10] and Loveless v. Universal Carloading Co., 10 Cir., 1955, 225 F.2d 637. Hopper involved the complete loss in a train wreck of a carload of paper. The salvage was disposed of by the railroad for a nominal amount without consultation with or accounting to the owner. The carrier promptly advised consignor and consignee in writing of the destruction of the shipment. The Court felt that these facts charged the carrier "with actual knowledge of all the conditions as to the damages that a written notice could give." [178 F.2d 181.]

We do not have that situation here. The machinery was not destroyed or tak-

---

**9.** Cf. Southern Pac. Co. v. Stewart, 1919, 248 U.S. 446, 39 S.Ct. 139, 63 L.Ed. 350; Northern Pac. R. Co. v. Wall, 1916, 241 U.S. 87, 36 S.Ct. 493, 60 L.Ed. 905; Southern R. Co. v. Prescott, 1916, 240 U.S. 632, 36 S.Ct. 469, 60 L.Ed. 836; Atchison, T. & S. F. R. Co. v. Robinson, 1914, 233 U.S. 173, 34 S.Ct. 556, 58 L. Ed. 901; Chicago & Alton R. R. Co. v. Kirby, 225 U.S. 155, 32 S.Ct. 648, 56 L.Ed. 1033.

**10.** The holding of Hopper has been questioned in several cases. Of it the First Circuit, in Insurance Co. of North America v. Newtowne Mfg. Co., 1 Cir., 1951, 187 F.2d 675, 681, said: "Hopper Paper Co. v. Baltimore & O. R. R. Co. * * * seems perhaps out of line with the other cases * * *"; the Sixth Circuit, in Delphi Frosted Foods Corp. v. Illinois Cent. R. Co., 6 Cir., 1951, 188 F.2d 343, 345, stated: "As expressly stated in the opinion therein, Hopper * * * is based upon the peculiar facts of the case;" and the Seventh Circuit, in Mackie, supra, 195 F.2d at page 643, commented: "Whether, in light of the unusual circumstances of that case, the holding is reconcilable with the federal rule we need not stop to inquire."

The District Court of the Southern District of New York in Delaware L. & W. R. Co. v. United States, D.C.1954, 123 F.Supp. 579, 583, noted that Hopper's holding "has been seriously questioned in later cases;" and the District Court for the Western District of Pennsylvania, in Penn State Laundry Co. v. Pennsylvania R. Co., D.C.1955, 134 F.Supp. 955, 957, felt that " * * * subsequent decisions have limited the Hopper Paper case as authority to its factual situation."

en over by appellant and the report of the subordinate employee indicated that the injury to the machinery was trivial and that damages were superficial, amounting to about $200.00. The shipment was accepted by the consignee, which waited more than two years after its receipt and more than nine months after the carrier had disclosed in writing full particulars concerning the accident, before filing a claim or indicating any purpose to file one.

Loveless was decided chiefly on a point not involved here, i. e. whether extensive dealings between shipper and carrier as the result of which the shipment, at first rejected, was accepted conditionally, followed by writings promptly passed between the parties, constituted a substantial compliance with the requirement of notice of claim. That case is more like our decision in Thompson v. James G. McCarrick Co., 5 Cir., 1953, 205 F.2d 897, where claims were actually filed and challenged as insufficient. We discussed most of the Supreme Court decisions herein cited, approved many of the principles here announced, and held that the claims filed substantially satisfied the bill of lading requirements.

The case before us is, in our opinion, controlled by the Supreme Court decisions, supra, and we adhere to the principles thus clearly established even if our conclusions should be considered at war with the decisions so relied upon by appellee. It seems clear that appellee was not entitled to recover the damages claimed by it for the reason that it did not observe the contract requirements as to filing claim, and that the Court below erred in so holding. It is further stipulated that appellee is indebted to appellant in the amount sued for in the original actions for freight charges based upon published tariffs and covering transportation services performed by the carrier under contracts with appellee. For the entry of a judgment in conformity with the views herein expressed, the cause is reversed and remanded.

Reversed and remanded.