CHARLEY HAYASHIDA FARMS, INC., Plaintiff-Appellant, *v.* GEORGE P. BAKER *et al.*, as Trustees, Defendants-Appellees.

DEMANSE & MANNA COMPANY, INC., Plaintiff-Appellant, *v.* GEORGE P. BAKER *et al.*, as Trustees, Defendants-Appellees.

(Nos. 58800-01 cons.;

First District (2nd Division)—December 11, 1973.

Mel Cahan, of Chicago (Lurie, Orth & Cahan, of counsel), for appellants.

Anna M. Kelly, of Chicago, for appellee Denver & Rio Grande Western R.R. Co.

John K. Kallman, of Chicago (Sidley & Austin, of counsel), for appellee Union Pacific R.R. Co.

Mr. PRESIDING JUSTICE STAMOS delivered the opinion of the court:

Plaintiffs appeal an order dismissing the Denver & Rio Grande Western Railroad Company (DRGW) as an additional defendant named in

amended complaints. The causes were consolidated and, because they present a typical and recurring set of facts arising in the wake of Penn Central's reorganization, the Union Pacific Railroad was granted leave to file an *amicus curiae* brief.

The pertinent facts in both *Hayashida* and *Demase* are closely parallel. Each plaintiff delivered perishable produce together with a through Bill of Lading to the DRGW for shipment by rail. The Bills of Lading specified routing, naming the DRGW as the initial line-haul carrier and the Penn Central as the delivering line-haul carrier. Following delivery to the consignee, each plaintiff claimed damage to its shipment. Within nine months of the delivery written notice of the claim was filed with the receiving carrier, DRGW. Thereafter, DRGW by letter disallowed each claim in whole or in substantial part, and within two years and one day of the disallowance letters, suits were filed against the delivering carrier, Penn Central. Each complaint stated sufficient facts so that, if the allegations were all true, the DRGW and the Penn Central, had both been made defendants, would have been jointly and severally liable to the plaintiff for damages.[1]

Subsequently, Penn Central filed a Petition for Reorganization under Section 77 of the Federal Bankruptcy Act and, consequently, all claims for freight loss or damage arising prior to the filing of the reorganization petition, became claims in bankruptcy. Then, more than two years and one day after DRGW's disallowance letters, each plaintiff filed an amended complaint naming the receiving carrier, DRGW, as an additional defendant in the pending suits. DRGW moved for dismissal, grounding its motion upon the contention that it had not been named a defendant within two years and a day of its letter of disallowance in contravention of the following condition set forth in the Bill of Lading:

"Sec. 2(b) As a condition precedent to recovery, claims must be filed in writing with the receiving or delivering carrier, or carrier issuing the bill of lading, or carrier on whose line the loss, damage, injury or delay occurred, within nine months after delivery * * *; and suits shall be instituted against any carrier within two years and one day from the day when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim or any part or parts thereof specified in the notice. Where claims are not filed or suits are not instituted thereon in accordance with

---

[1] The Interstate Commerce Act provides that both the originating and delivering carrier are liable to the holder of the bill of lading for the full actual loss, damage or injury irrespective of whether the loss, damage or injury occurred while the goods were in that carrier's possession. 49 U.S.C.A. Sec. 20(11).

the foregoing provisions, no carrier hereunder shall be liable, and such claims will not be paid."

The trial court granted the motion. On appeal the issue is whether section 2(b) of the contract of carriage between the parties prohibits the plaintiffs, who sued one carrier within the time period provided by section 2(b), from joining another defendant carrier after the expiration of the time period.

Section 2(b) of the Bill of Lading is drafted in compliance with the Interstate Commerce Act, 49 U.S.C.A. Sec. 20(11), which provides, *inter alia*:

"* * * PROVIDED FURTHER That it shall be unlawful for any such receiving or delivering common carrier to provide by rule, contract, regulation, or otherwise a shorter period for the filing of claims than nine months, and for the institution of suits than two years, such period for institution of suits to be computed from the day when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim or any part or parts thereof specified in the notice."

In enacting Section 20(11), Congress has regulated the power of common carriers and shippers to contract, rather than promulgate a statute of limitations. (*Louisiana & Western R.R. Co. v. Gardiner*, 273 U.S. 280.) In *Denney & Co. v. Southern Pacific Co.*, 263 Ill.App. 106, this court, recognizing the absence of any federal statute of limitations, held that the enactment of the Interstate Commerce Act preempted the field from state regulation, including state statutes of limitations. The court stated:

"We are of the opinion that Congress has assumed exclusive control of the subject of shipments under interstate commerce and that the conditions named in the bill of lading are binding and exclusive of any State regulation. The very purpose of the federal legislation is to make the provisions regarding interstate commerce uniform without regard to local legislation upon the subject. To permit a shipper to bring suit under section 2 of the Illinois Limitations Act, Cahill's St. ch. 83, § 26, after the period in the bill of lading had expired, would violate this rule of uniformity. The federal law makes no provision for the commencing of a new suit after the period of limitations contained in the bill of lading has expired." 263 Ill.App. at 109.

Since there is neither federal nor state periods of limitations involved, plaintiffs correctly conclude that resolution of the instant appeal rests upon the construction of Section 2(b) of the contract of carriage. In furtherance of a construction which would allow joinder of an addi-

tional carrier after expiration of the two-year period, plaintiffs argue two points.

First, plaintiffs note that section 2(b) contains a twofold prescription regarding time limitations: "claims" must be filed within nine months after delivery; and "suits" must be instituted within two years and one day from the date notice of disallowance is given. As to the matter of filing the claims, it has been held that the filing of a claim with any one of the carriers specified in section 2(b) constitutes notice to and a claim upon all of the line-haul carriers who may be liable under the Interstate Commerce Act. (*Northern Pacific Ry. Co. v. Hall,* 241 U.S. 87.) Therefore, plaintiffs contend, the bringing of suit against one carrier within the required period satisfies that condition as to all carriers.

Secondly, plaintiffs urge that the limitation period contained in section 2(b), unlike a statute of limitations which operates as a personal defense, conditions the substantive right. The theory is grounded on that part of section 2(b) which provides: "Where claims are not filed or suits are not instituted therein in accordance with the foregoing provisions, *no carrier hereunder shall be liable,* and such claims will not be paid." (Emphasis supplied.) This sentence, plaintiffs argue, manifests the parties' intention that a failure to fulfill either condition in respect to any of the contracting parties results in nonliability for all carriers. On this theory, unless timely suit against one carrier is held to constitute timely suit against all carriers (just as a claim filed with one is held to constitute a claim filed with all), the result will be to nullify the timely suit filed against the one. For example, if DRGW is entitled to have plaintiffs' suit against it dismissed, it will then become necessary to dismiss plaintiffs' suit against Penn Central, because the dismissal of plaintiffs' suit against DRGW will demonstrate that "suits [have not been] instituted thereon in accordance with the foregoing provisions," and the consequence of that is that "no carrier hereunder shall be liable, and such claims will not be paid."

■■ We concur in plaintiffs' assertion that the only limitation upon the time for filing suits is contained in section 2(b); however, we think it properly characterized as a contractual statute of limitations rather than a limitation which conditions the substantive right. Although section 2(b) might have been more artfully drafted, an ordinary reading of it evidences an equivalent intent and purpose to that of a statute of limitations. Section 2(b) consists of two parts. The first part provides that a claim for loss or damage must be filed in writing within a specified time, "with the receiving or delivering carrier, or carrier on whose line the loss, damage, injury or delay occurred." This requirement has been construed as a notice requirement. (*Georgia, F. & A. Ry. v. Blish Milling Co.,* 241

518

U.S. 190.) The language of the first part is in the disjunctive, and inasmuch as investigation of the claim involves contact with all connecting carriers, it is held that filing notice of a claim with one carrier is notice of the claim to all carriers. *Northern Pacific Ry. Co. v. Hall, supra.*

The second part of section 2(b) provides that suits shall be instituted within two years and one day after notice of disallowance of the claims, or the respective claims will not be paid. We reject plaintiffs' contention that the language—"no carrier hereunder shall be liable"—absolves all contracting parties from liability when a condition fails in respect to any party; the more reasonable construction is that the language has reference only to a carrier who has not been drawn within the purview of both conditions. We think the clear purpose of the second condition is to limit the right to sue, and therefore an action brought against a defendant carrier, after passage of the period, is barred. Plaintiffs' construction impliedly asserts that the limitation on the bringing of suit operates merely as a further notice provision when suit has been brought against some, but not all, carriers. However, the carriers already have notice under the first condition imposed by section 2(b); plaintiffs' construction would make the second condition substantially redundant, in violation of the elementary rule of construction which requires that each provision of a contract be given effect. Therefore, although both the Penn Central and DRGW may be initially accountable to plaintiffs if timely sued, the failure to sue DRGW within the section 2(b) time period bars recovery against that carrier. This conclusion finds support in both decisional law and by analogy to the Illinois' statute of limitations.

In *Leigh Ellis & Co. v. Davis*, 260 U.S. 682, plaintiff sued for loss of part of a shipment of cotton. The suit was dismissed for improper venue, and plaintiff refiled it, after the section 2(b) time period had passed. In affirming the dismissal of the second suit on the basis of section 2(b), the Supreme Court stated:

> "[W]e think it enough to observe that the general purpose was to limit, not to extend rights of action, and we cannot suppose that it was intended to invalidate existing contracts good when made. [Citations.] The statutes of the states where the goods were shipped and the suit was brought do not affect the contract and the reasonableness of the limitation is a matter of law [Citations], so that the bringing of a previous suit, alleged in the declaration, does not save the case."

Similarly, in *Lyon v. Canadian Pacific Ry.*, 163 N.E. 180 (Mass. 1928), a suit was commenced against the delivering carrier, Boston & Maine Railroad, to recover damages for a certain shipment of herring moving from Seattle to Boston which arrived in a decayed condition. After an

adverse decision, plaintiff then filed suit against the original carrier, Canadian Pacific, after the limitation period in section 2(b) had expired. In denying the plaintiff recovery, the court stated:

> "It is plain there is nothing in the contention. The 'uniform order bill of lading' in no wise restricts a plaintiff in his choice of remedies or in determining what carrier shall be first sued, where there are several carriers liable to respond in damages as upon the facts it shall be made to appear. Nor is there any provision in it that the running of limitation of time for suit shall be suspended in favor of a plaintiff against any one of several carriers while the plaintiff tries out the question of the liability of another. Upon the facts the plaintiffs here could have prosecuted an action, with some inconvenience and expense, against the initial carrier or against the defendant negligent carrier. He has had his day in court and cannot complain if he has misused and wasted it."

■■ Finally, since we have characterized section 2(b) as a contractual statute of limitations, it is appropriate to note that under the Illinois' statute of limitations, even if DRGW and Penn Central are considered joint obligors to plaintiffs, the filing of a lawsuit against Penn Central does not toll the statute as to DRGW, and after the statute has run, plaintiffs' right to sue DRGW would be cut off. (*Grewenig v. American Baking Co.*, 293 Ill.App. 604, 13 N.E.2d 183; *Proctor v. Wells Bros Co.*, 262 Ill. 77, 104 N.E. 186.) It is also evident that plaintiffs' amendment of their original actions to sue DRGW is the same as filing a new suit against DRGW. The action against DRGW is considered commenced as of the date of the amendment. *Grewenig v. American Baking Co., supra; Goff v. Will County National Building Corp.*, 311 Ill.App. 207, 35 N.E.2d 718.

■■ Accordingly, we conclude that section 2(b) of the contract of carriage prohibits the joining of a carrier as a defendant in a pending suit after the limitation period has expired.

For the foregoing reasons, the order of the Circuit Court is affirmed.

Judgment affirmed.

HAYES and DOWNING, JJ., concur.