**UNITED STATES of America**

v.

**SEABOARD COASTLINE RAILROAD.**

Civ. A. No. 74–0141–R.

United States District Court,
E. D. Virginia,
Richmond Division.

Oct. 21, 1974.

Raymond A. Carpenter, Asst. U. S. Atty., Richmond, Va., for plaintiff.

Eppa Hunton, IV and Virginia H. Hackney, Hunton, Williams, Gay & Gibson, Richmond, Va., for defendant.

## MEMORANDUM

WARRINER, District Judge.

United States of America, on behalf of Commodity Credit Corporation, filed a complaint against Seaboard Coastline Railroad for damages under Title 49 U. S.C. § 20(11), generally known as the Carmack Amendment. The railroad was either the receiving carrier or the delivering carrier with respect to substantial quantities of commodities shipped at various times from various points during 1971, 1972 and 1973.

It is conceded that certain of the claims are barred by the applicable statute of limitations and they will be eliminated from further consideration.

The railroad has filed a "Motion to Dismiss for Failure to State a Claim upon which Relief can be Granted and Motion for Summary Judgment" which raise a number of interesting points. The Court finds it necessary to consider only one point, that being dispositive of the case.

The operative facts are not in dispute. In each case the receiving carrier took possession of goods under a bill of lading which required the carrier to "stop-off" at points along the line so that portions of the goods could be removed by intermediate consignees before final delivery to the ultimate consignee. A boxcar would be sealed when received by the receiving carrier and it would remain sealed until it reached the stop-off for the first intermediate consignee. There the car would be placed upon a team track or upon the consignee's spur track. The first intermediate consignee would then take possession of the goods, remove the seal, and withdraw that portion of the goods consigned to him. Whereupon the car would be re-sealed and the process continued at each subsequent stop-off. In each instance complained of there would be a shortage of goods when the car reached the ultimate consignee. In some cases, this shortage was most substantial.

The dispositive issue, then, is whether the Carmack Amendment applies to a shipment which involves one or more stop-offs or intermediate consignees before reaching the ultimate consignee. Able counsel for both parties have been unable to cite to the Court authority on point. The Court's own research has not revealed a case which has considered this issue. Accordingly, the Amendment itself must first be looked to, to determine whether a loss occasioned during such a shipment is contemplated by the statute.

In pertinent part the Amendment reads as follows:

> Any common carrier, railroad, or transportation company . . . receiving property for transportation from a point in one State . . . to a point in another State . . . shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation com-

pany to which such property may be delivered or over whose line or lines such property may pass . . . when transported on a through bill of lading, and no contract, receipt, rule, regulation, or other limitation of any character whatsoever shall exempt such common carrier, railroad, or transportation company from the liability imposed; and any such common carrier, railroad, or transportation company so receiving property for transportation from a point in one State . . . to a point in another State . . . or any common carrier, railroad, or transportation company delivering said property so received and transported shall be liable to the lawful holder of said receipt or bill of lading or to any party entitled to recover thereon, whether such receipt or bill of lading has been issued or not, for the full actual loss, damage, or injury to such property caused by it or by any such common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass . . . when transported on a through bill of lading, notwithstanding any limitation of liability or limitation of the amount of recovery or representation or agreement as to value in any such receipt or bill of lading, or in any contract, rule, regulation, or in any tariff filed with the Interstate Commerce Commission . . .

▆ It is obvious that the main purpose of the Carmack Amendment was to place liability on either the receiving carrier or the delivering carrier for loss or damage caused by any carrier over whose lines the shipment traveled, so that a shipper would not have to determine where the loss or damage occurred and seek legal redress only where the proper venue lay with respect to the culpable carrier. Title 49 U.S.C. § 20(12) provides for recovery by the receiving or delivering carrier from the carrier on whose line the actual loss was sustained. Atlantic Coastline v. Riverside Mills, 219 U.S. 186, 200–201, 31 S.Ct. 164, 55 L.Ed. 167 (1911).

Not only does the Carmack Amendment provide greater convenience to a shipper in recovering for a loss, it provides greater assurance that recovery will be made. Under some circumstances it would be well nigh impossible for a shipper to determine exactly where a loss occurred. Further, placing the initial burden of payment upon either the receiving or delivering carrier is not at all unfair since, from receipt to delivery the goods are wholly in the possession of the receiving carrier, the delivering carrier, or one or more intermediate carriers hauling the goods for the benefit of the receiving or delivering carrier. At shipper's option, the courts have considered the receiving or delivering carrier as principal, with any intermediate carriers as agents. *Id.* at 206–207, 31 S.Ct. 164. Thus, the goods are in the possession of the principal or its agents from receipt to delivery.

The matter to be adjusted is one peculiarly within the knowledge of the carrier. It receives the goods and has them in its custody until the carriage is completed. It knows what it received and what it delivered. It knows what injury was done during the shipment and how it was done. *Id.* at 207, 31 S.Ct. at 170.

The language of the Amendment supports the view that exclusive possession by one or more carriers is contemplated. Stop-off arrangements whereby partial deliveries are made to intermediate consignees do not fit comfortably within the language in the Amendment which speaks of "from a point in one State . . . to a point in another State. . . ." It is true this language could be construed so as not to exclude multiple stops for partial delivery of one shipment, but the more natural construction would be that the language means what it says—a point to point shipment. Such a construction is also more consistent with the concept of exclusive possession mentioned above.

■ A further examination of the language in the amendment shows that its provisions are applicable to losses only when the property was "transported on a through bill of lading." The language of the statute and of the cases makes clear, however, that it is not the name given to the bill of lading, or indeed, the actual issuance of any bill of lading, which determines whether or not liability attaches. Northern Pacific Railway v. Wall, 241 U.S. 87, 91–92, 36 S.Ct. 493, 60 L.Ed. 905 (1916); Southern Pacific Company v. Stewart, 245 U.S. 359, 362, 38 S.Ct. 130, 62 L.Ed. 345 (1917). But the limitation in the Amendment, appearing in two separate places, emphasizes that the Amendment is applicable, when more than one carrier is involved, only in situations where a through bill of lading was or ought to have been issued.

A "through bill of lading" is not defined in the Bills of Lading Act, 49 U.S.C. § 81 et seq, nor in the Uniform Commercial Code. See *e. g.* Va.Code Ann. § 8.7–302 (Added Vol.1965). The court in Lifschultz v. United States, D.C.N.Y., 144 F.Supp. 606, 612 (1956) defined a through bill as one for the transportation of goods from "the point of origin to the designated point of destination." A similar definition is contained in 13 Am.Jur.2d, Carriers § 265:

A "through bill of lading" is one whereby the carrier agrees to transport the goods from the point of delivery to a designated point of destination, although such transportation extends over the line of a connecting carrier.

The concept of through transportation is further discussed in 14 Am.Jur.2d, Carriers §§ 689–699. Blacks Law Dictionary (4th Ed., 1951) defines a "through bill" as a contract for delivery of goods to "a specified person at a specified place." In Northern Pacific Railway v. Wall, *supra* 241 U.S. at 92, 36 S.Ct. at 495 (1916) it was stated that: "[t]he

Carmack Amendment to the Interstate Commerce Act . . . directs a carrier receiving property for interstate transportation to issue a through bill of lading therefor, although the place of destination is on the line of another carrier . . . ."

■ While none of these definitions excludes the idea of a stop-off, it is clear that a stop-off was not contemplated since each speaks of the destination in the singular. Further, the word in common parlance, when used in the connotation of transportation, implies nonstop treatment. Webster's New International Dictionary (2nd Edition) defines "through," the adjective, under the heading "transportation," as follows:

Extending or going from point of departure to destination, or from one end to the other of a route, without break, change, reshipment, or the like; . . . extending, going over a route that includes two or more lines of transportation without change or reshipment, or under a single contract of shipment; as through transportation; through traffic; through train.

Another matter to be considered is the fact that a carrier is not liable for any loss or damage which was not caused by a carrier in the chain of delivery. The statute reads:

Any common carrier . . . shall be liable . . . for any loss, damage or injury to such property caused by it . . . .

This language makes it clear that the carrier is not an insurer, but is only liable where the nature of the transaction makes it reasonably clear that the loss or damage was actually caused by the carrier. The Supreme Court so held in Adams Express Company v. Croninger, 226 U.S. 491, 506, 33 S.Ct. 148, 57 L.Ed. 314 (1913).

■ Though the carrier is not an insurer, in the ordinary case to which

the Carmack Amendment is applicable, the plaintiff need only prove, in essence, that the goods were received by the carrier at the point of origin but were delivered at the destination in a damaged condition or with a portion or all of the goods missing. Missouri Pac. Railroad Company v. Elmore & Stahl, 377 U.S. 134, 137, 84 S.Ct. 1142, 12 L.Ed.2d 194 (1964). The liability arises under a theory similar to *res ipsa loquitur*. As stated in Fulton v. Chicago R. I. & Pac. R.R., 481 F.2d 326, 333 (8th Cir. 1973):

> . . . the carrier bears a heavy responsibility of proof akin to *res ipsa loquitur* because it has peculiarly within its knowledge the facts which may relieve it of liability.

Thus, while the requirement that the damage be "caused by" the carrier can be met by proof of the prima facie case of delivery to the carrier and non-receipt by the consignee, this truncated proof is allowed only because the entire concept of liability under the Amendment is predicated upon exclusive control by the carriers. Plaintiff does not deny that in each shipment in question, the carriers delivered up exclusive control over the goods to one or more intermediate consignees, in obedience to orders given by plaintiff when the goods were delivered for shipment.

Under such circumstances and for the foregoing reasons, the Court is compelled to the conclusion that the Carmack Amendment is not applicable to claims for losses incurred in a shipment involving stop-offs for partial delivery to intermediate consignees. Such a holding is not in derogation to any rights plaintiff may have for recovery against defendant or others, other than under the Carmack Amendment. Further, the Court perceives no hardship to shippers under this holding since a shipper may readily bring himself under the protection of the Carmack Amendment by obtaining a separate through bill of lading for each consignee.

An appropriate order shall issue.