**UNITED STATES of America**

v.

**CENTRAL OF GEORGIA RAILWAY COMPANY.**

**No. CIV–1–75–128.**

United States District Court, E. D. Tennessee, S. D.

March 23, 1976.

---

Ray H. Ledford, Asst. U. S. Atty., Chattanooga, Tenn., for plaintiff.

Hall, Haynes, Lusk & Foster, Chattanooga, Tenn., for defendant.

## MEMORANDUM

**FRANK W. WILSON, Chief Judge.**

This is an action brought against the defendant, Central of Georgia Railway Company, pursuant to the Interstate Commerce Act, 49 U.S.C. § 20(11). Jurisdiction of the Court is invoked under 15 U.S.C. § 714c and is not in dispute. This case is presently before the Court upon the pleadings, a stipulation of fact and upon cross motions for summary judgment.[1]

The following summary is drawn from the stipulation and pleadings. Upon four occasions, certain commodities (flour and butter) were caused to be shipped by the plaintiff, Commodity Credit Corporation, to common carriers for shipment, the bills of lading requiring partial unloadings to consignees at intermediate points during the interstate shipment. For each of the four shipments at issue, the loaded cars were delivered sealed to the initial carriers. At each intermediate unloading point, with the exception of the shipment of November 1973, the seals were inspected and found to be intact. Upon delivery of the cars to the consignees, the seals were broken and removed by the consignees who thereupon performed the partial unloadings and resealed the cars before redelivery to the carrier for further shipment. In each instance, the defendant was either the initial or the delivering carrier. Losses were acknowledged upon final delivery of each shipment for which the present action is brought.

At common law, a common carrier's responsibility for losses was strict, but limited to losses which occurred on its lines. Thus, where arrangements for shipment included connecting carriers, the party sustaining a loss had a difficult task of discovering which of multiple carriers had possession of the shipment when the loss occurred. *See, generally,* J. WHITE and R. SUMMERS, UNIFORM COMMERCIAL CODE (1972) § 21–3, n. 72. The purpose of the 1906 Carmack Amendment to the Interstate Commerce Act (42 U.S.C. § 20(11)) was to alter the common law only as to the initial carrier, to allow suit against the initial carrier for losses regardless of which carrier's line the loss occurred on, "and thereby to relieve [the consignee] from the necessity of searching out and proving a case against a terminal or intermediate carrier." *Oregon-Washington Railroad & Navigation Co. v. McGinn,* 258 U.S. 409, 416, 42 S.Ct. 332, 334, 66 L.Ed. 689, 692 (1922). A subsequent change in the Act occurred in 1927 with the Newton Amendment (49 U.S.C. § 20(11)) which imposed the same liability upon the delivering carrier as the Carmack Amendment had imposed upon the initial carrier. *See, e. g., Assoc. of Maryland Pilots v. B. & O. Ry. Co.,* 304 F.Supp. 548 (D.Md.1969); Annotation, 9 A.L.R. Fed. 960, § 2. The present wording of the Act, in pertinent part, is as follows:

". . . any . . . common carrier . . . receiving property for transportation from a point in one State . . . to a point in another State . . . or any common carrier . . . delivering said property so received and transported shall be liable . . . for the full actual loss . . . caused by it or by any such common carrier . . . to which such property may be delivered or over whose . . . lines such property may pass . . . when transported on a through bill of lading . . . ."

---

1. The plaintiff's motion to be permitted to file its motion for summary judgment being unnecessary, the same will be treated as sustained.

■ The phrase "caused by" in the Amendment has been interpreted to mean that a common carrier is liable for all losses which occurred while the goods were being transported by it, unless the carrier can demonstrate that it is free from fault. *Secretary of Agriculture v. United States,* 350 U.S. 162, 165–166 n. 9, 76 S.Ct. 244, 247, 100 L.Ed. 173, 178 (1955); *Galveston, Harrisburg & San Antonio R. Co. v. Wallace,* 223 U.S. 481, 492, 32 S.Ct. 205, 207, 56 L.Ed. 516, 523 (1911). In addition, where the losses were incurred because the goods were damaged in transit, the carrier

> "is liable for [the] damage . . . unless it can show that the damage was caused by '(a) the act of God; (b) the public enemy; (c) the act of the shipper himself; (d) public authority; (e) or the inherent vice or nature of the goods.' "

*Missouri Pacific R. Co. v. Elmore & Stahl,* 377 U.S. 134, 137, 84 S.Ct. 1142, 1144, 12 L.Ed.2d 194, 197 (1964).

For its contention that the Act does not apply where there are partial unloadings, the defendant relies on a factually similar case, *United States v. Seaboard Coastline R. R.,* 384 F.Supp. 1103 (E.D.Va.1974). Construing the language of the Act, and especially the term "through bill of lading," that Court held that "the concept of liability under the Amendment is predicated upon exclusive control by the carriers." *Id.* at 1107. Because this control was interrupted by the control of intermediate consignees during unloading, the defendant's motion to dismiss was sustained. The Court cited no authority for its holding.

■■ Of course, the mere breaking of a shipment by a carrier for purposes of reloading does not affect application of the Act, *Phoenix Ins. Co. v. Monon Railroad,* 438 F.2d 1403 (8th Cir. 1971). *See also, Republic Carloading & Distributing Co. v. Missouri Pacific R. Co.,* 302 F.2d 381 (8th Cir. 1962). Thus, what the holding in *Seaboard* means, in effect, is that a bill of lading is or is not a "through bill" depending upon who breaks the shipment, the carrier or the consignee.

That Court might have been overly technical in construing the meaning of "through bill." Such a bill of lading is simply a contract, issued by the initial carrier, which controls the manner of shipment to destination. *Missouri, K. & T. R. Co. v. Ward,* 244 U.S. 383, 387, 37 S.Ct. 617, 619, 61 L.Ed. 1213, 1215 (1917). This type of shipment is in contrast to one in which each connecting carrier enters into separate contracts with the shipper and for which it would be anomalous to hold the initial carrier responsible. In *Seaboard,* the Court suggested that, where there are partial unloadings, subsequent new bills of lading should be made by the connecting carriers to come within the Act. However, it is questionable whether any new bills issued by a connecting carrier would be valid as they would not alter the terms of the initial bill. *See, Mexican L. & P. Co. v. Texas Mexican Ry. Co.,* 331 U.S. 731, 734, 67 S.Ct. 1440, 1441, 91 L.Ed. 1779, 1781 (1946). The argument in *Seaboard* that "through bill" implies a single destination is also questionable as it is not uncommon, for example, for goods to be shipped in truck trailers "piggy back" on railroads, *Phoenix Ins. Co. v. Monon Railroad, supra,* with subsequent delivery by truck to multiple consignees being within the Act, *Sun Ins. Office Ltd. v. Be-Mac Transport Co.,* 132 F.2d 535 (8th Cir. 1943).

■■ The defendant's second contention is that the presence of unbroken seals at each delivery point rebuts the plaintiff's *prima facie* case that the losses were "caused by" the carrier. In *United States v. L. & N. R. Co.,* 389 F.Supp. 250 (M.D.Ala.1975), cited by the defendant, the Court held that, where loss by theft is alleged, the presence of unbroken seals at intermediate partial delivery points precluded the plaintiff's case. It is noteworthy that there was no discussion in *L. & N.* of the Act's being inapplicable to partial deliveries in such a circumstance. In the opinion of the Court, this second defense is well taken.

There is no proof here as to how the losses occurred, whether by theft, misdelivery or other cause. However, unbro-

ken seals between unloadings in all but the November 1973 consignment establish that the shipments between delivery points was not tampered with. *Blue Bird Food Products Co. v. B. & O. R. Co.,* 492 F.2d 1329, 1333 (3d Cir. 1974). Thus, the losses could only have taken place during unloading.[2] It is stipulated that the defendant was not involved with the initial loading, nor with the sealing, resealing or unloading operations which were accomplished by the shipper and consignees respectively. In addition, nothing in the record indicates any contractual obligations upon the defendant in this regard. *Compare, Michigan Central R. Co. v. Mark Owen & Co.,* 256 U.S. 427, 431, 41 S.Ct. 554, 555, 65 L.Ed. 1032, 1035 (1920); *Georgia Kraft Co. v. Terminal Transport Co.,* 343 F.Supp. 1240 (E.D.Tenn.1972). For whatever reasons, the plaintiff found it more convenient to ship its commodities in carload lots to a number of buyers on a through route than to ship less than carload lots separately. This mode of shipment requiring the release of custody of the goods to multiple consignees was the mode contemplated and contracted for by the plaintiff. Had all consignees been at the same destination and had the carload been delivered to them simultaneously, the defendant's liability under the Act would have ceased at the moment of delivery. *Chicago & North Western R. Co. v. Union Packing Co.,* 514 F.2d 30, 34 (8th Cir. 1975); *Keystone Motor Freight Lines v. Brannon-Signaigo C. Co.,* 115 F.2d 736, 738 (5th Cir. 1940). The Court is unable to determine why a different result should pertain where multiple consignees took delivery consecutively, the unbroken seals having established that losses did not occur between delivery points.

The plaintiff contends that the restricted exclusions from liability where goods are damaged in transit, as specified in *Missouri Pacific R. Co. v. Elmore & Stahl, supra,* apply equally here where the losses were caused either by negligence or theft while the goods were within the consignees' possession. However, the Court in *Elmore & Stahl* emphasized that it is only "while the carrier has *possession,* [that] it is . . . in a position to acquire the knowledge of what actually damaged a shipment entrusted to its care." *Id.* 377 U.S. at 144, 84 S.Ct. at 1148, 12 L.Ed.2d at 201 (emphasis added). In any case, it would be anomalous to hold a delivering carrier liable for the loss of goods which may never have been placed in its custody. *See, Riss & Co. v. United States,* 213 F.Supp. 791 (W.D.Mo.1962). It would be equally anomalous to make the initial carrier a guarantor of unloading operations where the shipper contracted for the consignees to have possession during unloading.

■■ Negligence need not be proved in actions brought under 49 U.S.C. § 20(11). It is assumed, thereby placing upon the carrier the burden of showing that the loss was not caused by its negligence and, in the case of an initial or delivering carrier, that the loss was not caused by the negligence of a connecting carrier. *See, e. g., Galveston, Harrisburg & San Antonio Ry. Co. v. Wallace,* 223 U.S. 481, 32 S.Ct. 205, 56 L.Ed. 516 (1911); *Blue Bird Food Products Co. v. B. & O. R. Co. (Blue Bird I),* 474 F.2d 102, 104 (3d Cir. 1973). With regard to the shipments of August 28, 1972, August 13, 1973 and September 18, 1973, the presence of unbroken seals between delivery points, and the fact that unloading was performed by the consignees combine to rebut the plaintiff's *prima facie* case. The plaintiff not having come forward with any affirmative evidence of negligence by any carrier in

---

**2.** There is some dispute as to whether all of the shipments were made with the "shipper's load and count." This phrase, if appearing on the bill of lading, merely places the burden upon the plaintiff of proving the amount and condition of the goods loaded initially. 49 U.S.C. § 101. *Dublin Co. v. Ryder Truck Lines, Inc.,* 417 F.2d 777 (5th Cir. 1969), for the purposes of assessing damages. The amount and value of the losses having been stipulated to by the parties, resolution of this dispute is not relevant to this lawsuit.

any of these shipments, the defendant's motion for summary judgment will be sustained. With regard to the November 15, 1973 shipment, it is admitted that the seals had been tampered with and therefore the defendant has failed to sustain its burden of proof.

An order will enter accordingly.